## UNITED STATES v. STAFFORD et al.

(District Court, E. D. Kentucky, at Richmond. April 25, 1923.)

1. Arrest ⬅63(3), 71—Officer may arrest and search person committing offense in presence.

A peace officer has the right to arrest and to search a person, if he is committing a criminal offense in the officer's presence.

2. Arrest ⬅71—Constitution does not prohibit search and seizure following lawful arrest.

The Constitution does not prohibit every search and seizure, but only prohibits an unreasonable search and seizure (Amendment 4), and where there has been a lawful arrest, there is always a right to search and seize.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Arrest ⚖➟63(3)—Offense committed in "presence," where things observed afford reasonable grounds for suspecting such.**

An offense is committed in the "presence" of an officer, where things are observed by the officer which, viewed in the light of common knowledge, afford reasonable grounds for suspecting that such is the case.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Presence.]

**4. Arrest ⚖➟63(4), 71—When arrest and subsequent search and seizure may be made.**

In every case where there is some evidence tending to show that an offense is being committed, and it is such as to cause the officer sincerely to believe that such is the case, and it turns out that his belief is correct, the arrest and subsequent search and seizure are legal.

**5. Criminal law ⚖➟304(2)—Common knowledge that great quantities of whisky constantly being transported from certain county.**

It is a matter of common knowledge that from Washington county, Ky., great quantites of whisky are constantly being transported to Lexington and elsewhere.

**6. Arrest ⚖➟63(4), 71—Arrest and search of automobile held warranted.**

Where prohibition officers saw something in an open car, covered up, and, turning their car around, started to follow, when the other car so increased its speed that it was wrecked at a turn, the officers were warranted in arresting the persons driving the car, and in making a search of the car, wherein they found intoxicating liquors; they sincerely believing that the car was engaged in transporting whisky, and the result showing that their belief was sound.

Prosecution by the United States against Frank D. Stafford and another. On defendants' motion to quash evidence and return property seized. Motion overruled.

Sawyer A. Smith, U. S. Dist. Atty., of Covington, Ky.

King Swope and Chas. Fennell, both of Lexington, Ky., for defendants.

COCHRAN, District Judge. This case is before me on defendants' motion to suppress the evidence upon which the United States relies to bring about a conviction, on the ground that it was obtained upon an illegal search and seizure. It has been made upon the calling of the case for trial, but in advance thereof, and evidence has been heard. As I feel certain that the motion should be overruled, I will not delay the trial of the case for further investigation and treatment of the question raised, but proceed to give the views I now have, and which have driven me to that conclusion.

[1-3] It is the law that a peace officer has the right to arrest and to search a person, if he is committing a criminal offense in the officer's presence. When, then, is it to be said that a criminal offense is being committed in such officer's presence so as to justify an arrest and search? This is the sole question, in such a case as we have here, that calls for elucidation. In disposing thereof it only tends to blind one to elaborate upon the constitutional right of freedom from search and seizure. The constitutional provision does not prohibit every search and seizure. It only prohibits an unreasonable search and seizure. Where there has been a lawful arrest, there is always the right to search and seize. And that provision has nothing to do with what is and what

⚖➟For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

is not a lawful arrest. Resort has to be had to the common law to determine that matter; and according thereto, as stated, an arrest, and hence a subsequent search and seizure, is always lawful where a criminal offense is being committed in the officer's presence, and also, according thereto, such an offense is so committed where things are observed by the officer which, viewed in the light of common knowledge, afford reasonable ground for suspecting that such is the case. In support of this statement I quote from the opinion of Judge Deady, one of the able District Judges of former years, in the case of Ex parte Morrill (C. C.) 35 Fed. 261, 267. After quoting the Fourth Amendment to the federal Constitution, he had this to say:

"It has never been understood that this provision was intended to or does prevent an arrest by a peace officer—a sheriff or constable—for a crime committed in his presence. Whart. Crim. Pl. § 8; 1 Bish. Crim. Proc. § 181. The knowledge derived by the officer from his observation, acting under the sanction of his official oath, is considered equivalent to information supported by the oath of affirmation of another. Now, a warrant of arrrest may issue on 'probable cause,' supported by oath, and by analogy a peace officer may arrest on probable cause derived from his own observation. At common law a peace officer might arrest without warrant 'on reasonable grounds of suspicion,' and the facts and circumstances which furnish such grounds of suspicion amount to 'probable cause,' under the Constitution, which is such cause as will constitute a defense to an action for false imprisonment or malicious prosecution. Whart. Crim. Pl. § 9; 1 Bish. Crim. Proc. 182; Rap. & L. Law Dict. 'False imprisonment,' 'Malicious Prosecution.' Probable cause is a probability that the crime has been committed by the person charged. The facts stated upon oath 'must induce a reasonable probability that all the acts have been done which constitute the offense charged.' Cranch, C. J., in U. S. v. Bollman, 1 Cranch, C. C. 379; Wheeler v. Nesbitt, 24 How. 551. In other words, a crime is committed in the presence of the officer when the facts and circumstances occurring within his observation, in connection with what, under the circumstances, may be considered as common knowledge, give him probable cause to believe, or reasonable ground to suspect, that such is the case. It is not necessary, therefore, that the officer should be an eye or an ear witness of every fact and circumstance involved in the charge, or necessary to the commission of the crime."

It will be noted that what he says is based on such standard authorities on criminal law as Wharton and Bishop. It will be further noted that, according to this statement, in determining whether there was "probable cause to believe or reasonable ground to suspect," two things are to be taken into consideration, to wit, what was observed, and what was common knowledge. The former is to be viewed in the light of the latter. In order, then, for it to be said that an offense is committed in the arresting and searching officer's presence, it is not essential that what was observed by him should have been such as to convince beyond a reasonable doubt, much less to convince beyond any doubt, as it has been reported a circuit judge of this state charged a grand jury. Such a showing is not required to be made to obtain a search warrant to search even a private dwelling. No more than a showing of probable cause is required. The matter has been well put in the recent case of United States v. Rembert, 284 Fed. 996, which is now before me. I quote rather liberally from the opinion. It is said:

"If the court can find in any case that the officer had a bona fide belief, that by his senses he had detected or discovered a violation of the law, and if in the opinion of the court the evidence of the senses on which the officer

acted was sufficient grounds for the officer reaching that belief, then the arrest must be held justified, and the evidence obtained on it legal. If, on the contrary, it is the court's opinion, either that the officer had no real belief that a violation of the law had been discovered, or if it is the opinion of the court that this belief was based not upon probable cause, the arrest is not legal, the search is not effective, and the evidence obtained thereby may not be availed of."

Again it is said:

"Wherever a felony has been committed, either in the presence of the officer or as to which the officer has a belief induced by reasonable grounds, or a misdemeanor has been committed in the presence of the officer, that is, of which the officer has evidence by his senses sufficient to induce a belief in him based upon reasonable grounds of belief, an arrest may be made without a warrant, and the instruments and evidence of crime seized."

And again it is said:

"An offense occurs in the presence of an officer, and a discovery may be said to have been made by the  *  *  *  officers, when the evidence of their senses induces them to believe, upon reasonable grounds for belief, that an offense is being committed, and it is not necessary, if a sincere belief exists, and this belief is based upon reasonable grounds, that the officer actually see, before apprehension is made, the liquor the subject of the apprehension."

Still further it is said:

"Officers should be very loath to interfere with the rights of citizens, and should not arrest on mere suspicion, and wherever an arrest and consequent search of a person or vehicle is made without warrant, the government must be prepared to show, if it expects the evidence to be admissible, that the arrest and search was not a mere exploratory enterprise for the purpose of discovery, but was based upon a sincere belief, with reasonable grounds therefor, that an offense had been committed by the person or vehicle arrested."

The facts of that case were these: About midnight on a moonlight night, on a country road on the outskirts of Houston, Tex., a prohibition officer saw approaching him a Ford car driven by the defendant. The progress of the vehicle, as testified to by the officer, was marked by such a zigzagging course that he concluded that the driver was intoxicated and that the vehicle was being used to transport liquor. On that belief he stopped the vehicle, and, on search of it, discovered a bottle of liquor and that the defendant had been drinking. It was held that the arrest and search were lawful. It was said in conclusion:

"In the case at bar the court is convinced that Officer Myers had a sincere and real belief that, from the way and manner in which the car was being driven, the driver was intoxicated and that the car was being used to transport liquor contrary to law; and while the evidence of his senses on which that conclusion was based might at first blush appear to be meager, taken in the light of the experience of the officer in arresting and apprehending persons who had been handling the brand of liquor known as 'moonshine,' the court does not feel justified in holding that the officer had not probable cause for the belief engendered by the facts brought home to his senses."

[4] It is thus seen that the arrest and search were upheld in that case, notwithstanding it was recognized that the evidence on which the officer acted was meager. It was so held because the officer was experienced in such matters, and was sincere in his belief that the driver of the car was transporting liquor in violation of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.). It seems to me that these expressions and this decision are sound. I would put the

296 F.—45

matter this way: In every case where there is some evidence tending to show that an offense is being committed, and it is such as to cause the officer sincerely to believe that such is the case, and it turns out that his belief is correct, the arrest and subsequent search and seizure are legal. Whilst it may be the fact that, at the time of the arrest and search, he does not know what he subsequently discovers, yet the fact that the belief is found to be correct accredits the belief, and gives weight to the evidence on which the officer acted. He was on the ground, and he was acting under oath. It is not always possible for one to convey to another what he has observed as vividly as it appeared to him. It is on this ground that the opinions of common observers as to matters of fact are often admitted in evidence on a trial thereof. Possibly, by reason of experience, he is more skilled than the trial judge in determining the meaning of things in such cases. One apprehended whilst violating the law, and thereby prevented from continuing such violation, is not entitled to any further consideration. In determining the law as to the right of arrest, cases in which the officer has made a mistake are not pertinent. Those only are pertinent where he has made no mistake. A violator of the law, caught red-handed, is not entitled to shield himself under the law applicable to a nonviolator. The two do not stand on the same footing, and should not be placed there.

As bearing on the stopping and searching of automobiles on account of violations of the National Prohibition Act, it is to be noted that that act makes it the duty of the prohibition agents to seize any and all intoxicating liquors found being transported contrary to law in any vehicle, and the vehicle itself, when they "shall discover" that they are being so transported, without prescribing any limitations as to the efforts taken to so discover, and further that the act of November 23, 1921, making it an offense for such agents to search any other building or property than a private dwelling without a search warrant, prescribes that, in order for such to be an offense, it is essential that the search be made "maliciously and without reasonable cause." Under the latter act it is not sufficient that the search be made without reasonable cause. It is essential, further, that it be made maliciously.

[5] What, then, are the facts in this case? On the afternoon of April 4, 1923, two prohibition agents were going in an automobile from Lexington, on the Harrodsburg pike, to Brooklyn bridge, over the Kentucky river. When they came to the top of the hill above the bridge, they observed a touring car approaching them, with the two defendants on the front seat and no one behind them. The curtains of the car were up. They took note, as they approached the car, of its number, which showed that it was from Washington county, from which direction it was coming. This county adjoins Marion and Nelson counties. It is a matter of common knowledge, or, if not, it was within the knowledge of the two prohibition agents, as testified to by them, that from this center great quantities of whisky are constantly being transported to Lexington and elsewhere. According to that testimony, these three counties are generally spoken of as the "king counties of moonshine." They are in the Western district of this state, not in this. The car ap-

peared to them heavily loaded. As they passed it, the flapping of a curtain permitted them to see inside. They saw that there was something in it covered up. After they passed, they determined to turn around and follow the car. They did not know the defendants, but it is not unlikely that they knew the officers. Their conduct seems to indicate that they did.

[6] As the officers were turning, one of the defendants looked around to see what they were doing. As soon as it was noticed that they were turning around, the defendants immediately increased the speed of their car, and continued so to do until it was going at double the speed at which it had previously been going. They ran it so fast that in making a turn in the road they wrecked it. The defendant who was driving it at once jumped out and began to run. Thereupon one of the officers fired in the air to stop him. Both the defendants were then arrested and the car searched. It was found to contain 16 kegs, each containing 5 gallons of moonshine whisky, or 80 gallons in all. There was no assertion of authority on the part of the officers until the shot was fired. Prior thereto they had done nothing whatever of which the defendants had the right to complain. They had a right to turn around and follow the defendants; and the lawfulness of the arrest and search is to be determined in view of all that was observed before the firing of the shot, considered in the light of the knowledge before referred to. Both the officers were experienced. One of them, in the course of a not very long career as a prohibition agent, though he had made some mistakes, had put a stop to the transportation of whisky by 106 or 107 automobiles. They sincerely believed that the car was engaged in transporting whisky, and the result showed that their belief was sound. It is not necessary to do more than state the facts of this case to justify a holding that the arrest and search were lawful.

They argue themselves. It would be travesty on the due administration of the law to hold otherwise. In so holding, I have proceeded upon the idea that an offense which is actually being committed at the time of the arrest cannot be said to be committed in the presence of the officer, unless he has reasonable grounds to suspect that it is being committed. But, why not, so far as the offender is concerned, may it not be said to be committed in the officer's presence, even though he has no such knowledge? Can the offender in such a case sue the arresting officer for damage for false imprisonment? The question is not whether a nonoffender could sue him, in the absence of such ground, but whether an offender could, if the arrest is illegal. It would be worth while for some one to run down the books to see if a case can be found where it has been held that an offender, arrested whilst in the act of committing an offense, can sue the officer for damages for false imprisonment because at the time of the arrest he had no reasonable grounds to suspect that he was committing the offense and was arrested upon mere suspicion. Certainly one has no constitutional right not to be interfered with in the commission of a crime.

In another automobile case, which has been before me, prohibition agents after midnight stopped and searched two touring cars, each containing 15 gallons of moonshine whisky, and two trucks, each con-

taining 100 gallons of red whisky, in 20 kegs of 5 gallons each, stolen from a distillery warehouse, followed by a touring car, containing two men heavily armed, which they detained, all coming from the direction of "the king moonshine counties." They also stopped a preacher on some pastoral duty, and a doctor on some errand of mercy. The doctor made no complaint, and the preacher thanked them for their vigilance. I find it quite difficult to place these rum runners and robbers on the same footing as the preacher and the doctor in the matter of freedom from arrest and subsequent search, and the right to complain of irregularities therein.

The real question in this case is not whether the arrest and search were lawful. This is not a suit against the officers by the defendants to recover damages, nor an indictment against them under the Act of November 23, 1921. It is an indictment against the defendants for unlawfully transporting intoxicating liquor, and in advance of the trial they have moved to suppress the evidence obtained against them by such arrest and search. The sole question before me is whether such evidence is admissible against them; and this does not depend solely upon the lawfulness of the arrest and search. It may be that, though they were unlawful, yet such evidence is admissible against them. It does not necessarily follow, from the fact that such is the case, if so be it, that it is not so admissible. It may be that the only result which follows therefrom is that the officers are liable in an action for damages for false imprisonment, a most inconceivable possibility. It is held in England, Canada, and most of the states of this country that evidence obtained upon an unlawful search is nevertheless admissible to establish guilt. What he calls the "orthodox rule" on the subject is thus stated by Professor Wigmore:

"The admissibility of the evidence is not affected by the illegality of the means through which the party has been enabled to obtain the evidence."

The appellate court of this circuit (Sixth) so held in the Hardesty Case, 184 Fed. 269, 106 C. C. A. 411, and the Hartman Case, in 168 Fed. 30, 94 C. C. A. 124. This it did on authority of the decision of the Supreme Court of the United States in the Adams Case, in 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575. This decision no longer represents the position of that court. Its position is now otherwise established by its decisions in Weeks v. U. S., 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, Silverthorne Lumber Co. v. U. S., 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319, Gouled v. U. S., 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647, and Amos v. U. S., 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654, and the decisions therein are controlling on me. But in not one of those cases was the search and seizure made in pursuance of an arrest of the defendant whilst in the act of committing an offense. In each there was nothing but a search, held to be unlawful, and upon that search evidence was found of a past offense, and it was the admissibility of such evidence that was passed on in those cases. It does not follow necessarily, from a holding that such evidence was inadmissible, that evidence is inadmissible where there was an arrest for an offense which the party searched was committing at the time of the arrest. For it

is not the position of the Supreme Court that all evidence illegally obtained is inadmissible against a party. It was held in the Weeks Case that evidence obtained by a state officer without a search warrant, in violation of a state Constitution, and hence illegally obtained, was admissible in a prosecution in the federal court.

In the case of Burdeau v. McDowell, 256 U. S. 465, 41 Sup. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159, it was held that incriminating papers stolen from a defendant by a private party might be used in evidence against him; and there is reason to think that the Supreme Court will hold, if the question ever comes before it, that evidence obtained by a federal officer through search following an illegal arrest for an offense that the party is committing at the time of the arrest is admissible against him. The basis for this statement is to be found in the case of United States v. Welsh (D. C.) 247 Fed. 239, a decision by Judge Augustus N. Hand, District Judge of the Southern District of New York. According to the headnote he held therein as follows:

"Though Const. Amends. 4, 5, declare that the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated, and that no person shall be compelled in any criminal case to be a witness against himself, yet where defendant, unlawfully bringing into the United States a letter, was seized and the letter taken from his person by one acting for an officer of the United States, the letter may be used against him in a criminal prosecution therefor; for, the gist of the offense being the bringing of the letter into the United States, defendant does not come within the protection of the constitutional provisions."

At the time of the search in this case the officer had no reason whatever to think that the defendant was bringing into the United States the letter that was found. The search was an exploration pure and simple, without anything in appearance to justify it. Judge Hand concluded his opinion with these words:

"I think the district attorney is right in urging that any one could arrest the person carrying it, who was thus committing a felony in his presence. To be sure, the man making the arrest did not know that a felony was being committed. He took the risk of civil and perhaps criminal actions for assault and battery, if his suspicions turned out to be without foundation; but in this case it appears on the face of the indictment, and from the evidence adduced, that the suspicions were well founded, and the defendant was engaged in the commission of a felony. The constitutional safeguards against self-incrimination do not prevent the arrest of men engaged in the commission of crimes, or the seizure of property whereby the crime is being effected."

The decision in this case was affirmed by appellate court of the Second circuit. 267 Fed. 819. The Supreme Court of the United States denied an application for a writ of certiorari to review this judgment of affirmance. 254 U. S. 637, 41 Sup. Ct. 9, 65 L. Ed. 451. That was a felony case, and if it should be thought that its holding should be limited to such case—for which I see no reason—that does not prevent its application here. The indictment charges the two defendants with conspiring to transport intoxicating liquor, and the evidence heard on this motion tends to establish that they were so conspiring and such conspiracy is a felony.

But this case does not necessitate my committing myself on this question. This is so, because here the arrest and subsequent search and seizure were lawful. The officers had reasonable ground to believe, at the time of the arrest, that the offense of illegal transporting of intoxicating liquor was then and there being committed by the defendants. As to this there would seem to be no possible reason for a question.

In this connection I would speak a word of caution to the prohibition agents operating in this District, who are to be commended for their efficiency and fidelity. Extreme caution should be exercised in stopping and searching automobiles. This should not be done indiscriminately. Nor should it be done on mere suspicion alone. There should be some evidence tending to show that the law is being violated, such as, in the light of what is known, reasonably to cause the officer to suspect that such is the case. It is not only against the law to stop and search without some such evidence, but to so do has a tendency to render the prohibition law unpopular. So far as I am personally concerned, I would never make a point of an automobile in which I was riding being stopped by a prohibition official for searching purposes. I would gladly yield such right as I have in that particular to the good of society. I would look upon such yielding as a contribution to a worthy cause. As to the risk of being held up by highway robbers, it seems to me that it is largely imaginary. If any automobile has ever been held up in this state by a highway robber, I have never heard of it. Indeed, I have never heard of such a thing as a robbery being committed on the highways of Kentucky; and if one should happen to be so held up it is more prudent to submit than to attempt to fight or to run.

It is against the law of Kentucky for any one to carry concealed weapons, and no one ever does it openly for protection. But individuals are differently constituted. There are those amongst us, good citizens, who would resent such an interruption in their travels. Their views and rights should be respected, and nothing should be done to turn them against the enforcement of the prohibition law. In no contingency should there be a lawless enforcement of the law. On the other hand, it should be recognized that rum running on the highways of Kentucky, particularly from the center hereinbefore referred to, is and for some time back has been a scandal and a disgrace, and no concession should be made to the rum runners that they are not reasonably entitled to. Particularly should no position be taken that amounts, practically, to making them exempt from any interference in their nefarious business.

The motion to quash is overruled.