## Giannini et al. v. Garland.

Jan. 14, 1944.

362

Waller & Threlkeld for appellants.

Prince, Cox and Acree for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This is an action filed in the Marshall Circuit Court by appellee as plaintiff against appellants as defendants, whereby plaintiff sought to recover damages from defendants for falsely arresting him on the alleged charge of violating our game and fish code by fishing in the Tennessee River without complying with the statute in respect thereto.

The first paragraph of the answer denied the material averments of the petition, and its second paragraph justified the arrest by averring that at the time it was made "the plaintiff was then and there violating the fish and game laws of Kentucky, and committing

a misdemeanor in the presence of these defendants,'' each of whom were Conservation officers, commonly referred to as game wardens, who are vested by the statute with the enforcement of its provisions and authorized to arrest, even without warrant, any person found violating any of the provisions of the statute. A trial before a jury resulted in a verdict in favor of plaintiff for the sum of $250 upon which judgment was rendered and defendants' motion for a new trial having been overruled they have filed a copy of the record in this court with a motion for an appeal which is now sustained and the appeal granted.

On the early forenoon of October 24, 1941, defendants, as such officers, made a trip in a motorboat up the Tennessee River starting from Paducah, Kentucky. When they arrived near to a place called Altoona, shortly down the river from Gilbertsville, Kentucky (both in Marshall County), they discovered quite a distance ahead of them two men in a rowboat about seventy-five yards from the opposite side of the river, which is in Livingston County. One of the men was in the front end of the boat and appeared to be rowing it with oars, whilst the other one was standing in its rear end holding a rope or line in his hand and handling it as if it was a trotline. The officers then steered their course and pulled up by the side of the rowboat, discovering that the rope was tied to a dead motorboat which was being towed by the john boat which plaintiff and one Jones occupied. The officers before arriving there had discovered that there was a barrel in the john boat and they saw one of its occupants dipping water with a tin bucket and pouring it into the barrel. When reaching the john boat defendants also discovered an eighteen or twenty-pound catfish in the bottom of the rowboat and some forty or fifty pounds of other varieties of fish in the barrel. They observed that the bottom of the rowboat was wet and there was in it a trotline about 300 feet long with some of the hooks on it baited, the trotline still dripping water. In brief plaintiff's account of what then and there occurred as given by him on the trial was: ''Q. Now what did they do or say? A. They run the boat up by the side of my boat and Mr. Giannini demanded to check my fishing license and I told him I didn't have any license. I believe—I wouldn't be positive—I think that was the first one that demanded it, and I was the one that spoke up because

I was the fisherman and I told him that I didn't have any.'' He then stated that he told defendants that the fish he had in the boat belonged to him since he was the fisherman (the proof further showing that he was a commercial fisherman, and fished for profit). He stated that he lived ''on Mr. Jones' place'' in Marshall County and that ''I told them to come down there, if I couldn't prove a clear record to show them that I wanted to do what was right—that I would go with them anywhere'' and that Giannini answered, ''You are going to Smithland,'' which is the county seat of Livingston County.

Plaintiff, the two defendants and Mr. Jones then crossed the river to Gilbertsville in order to procure an automobile from another game warden residing in that village to transport the parties to Smithland; but on arriving there the local warden was out of town, when plaintiff proposed to deposit with defendants the estimated amount of fine and costs which was fixed at $29.50. Defendants accepted it and executed a receipt to plaintiff for the amount. Plaintiff was directed to report to the county judge in Smithland on the following Tuesday, but for some cause the trial was set forward to a later date at which time defendant Harper was absent, nevertheless the county judge tried plaintiff and acquitted him.

Defendant, Giannini, testified that when he pulled up by the side of the towboat of plaintiff and discovered its contents he said to plaintiff and his companion, Jones: ''It looks like you fellows had some luck this morning, * * * a nice catch you got there. Did you catch him in a net?'' Whereupon they answered: ''No, we caught him on a line.'' The officers then asked plaintiff if he had a license, receiving the answer, ''I don't have any;'' whereupon the officer asked the other occupant of the boat, Mr. Jones, if he had a license, receiving the answer that he was not fishing and plaintiff then said: ''No, he just came along with me to see me catch the fish, these fish and equipment all belong to me.'' The officer then said: ''You are supposed to have a license to take fish from the public waters of the state,'' when plaintiff answered: ''I have been aiming to go and get a license, I was going to get them this evening.'' The officer then asked plaintiff: ''When did you fish?'' receiving the answer, ''Just started.'' Defendants then asked when, receiving the answer: ''A

day or two." The officer then informed him that nine months and twenty-four days had passed without plaintiff having procured a fishing license when he answered: "I have been aiming to buy it, I bought my musseling license." Defendant, Giannini, then said: "I will have to arrest you and take you to Smithland, you are nearer to Livingston County than to Marshall County."

It was uncontradictedly proven that plaintiff never did at the time of his arrest state any place from which the discovered fish had been taken from the river, nor made any claim that they were so taken from a place where a license was not required. The other defendant, Harper, substantiated in his testimony all of the material testimony of his co-defendant.

The banker at Gilbertsville, who was introduced by plaintiff and from whom a part of the money deposited with the officer was borrowed, was asked: "On this occasion didn't Mr. Garland say to you at the time that he wanted to borrow some money, that he had been caught fishing without a license? A. Yes sir. Q. And he wanted to pay off? A. To pay his fine or make bond." Plaintiff in his testimony nowhere denied the admissions testified to by defendant as to what occurred at the immediate time of plaintiff's arrest, although he was introduced in rebuttal after defendants had given their testimony. Therefore, their statements as to what occurred at that time stands uncontradicted.

Plaintiff's theory of the case as presented in brief of his counsel is (1) that he committed no offense "in the presence" of defendants and that in the absence of a warrant they had no right to arrest him and (2) that he had committed no offense at all, because under the prevailing statute at that time (Ky. St. Supp. 1939, sec. 1954d-13) it was prescribed: "* * * landowners, their resident children and lessees on such lands may without a license take fish by angling from the waters therein * * *." And since plaintiff later claimed that he took the fish discovered by the officers from the shore of a seven-acre tract of land owned by Jones with a trotline, he was therefore (as an alleged lessee of Jones) not required to obtain a license in order to catch fish by angling from that shoreline.

Defendants, on the other hand, contend and argue (a) that the discoveries they made at the time of the arrest through their senses (sight), plus the admissions

made by plaintiff at that time sustained their conclusion that the offense was one committed in their presence, and (b) that defendant was not a lessee of any part of the premises of Jones within the contemplation of the exempting excerpt supra from the statute. It is the conclusion of the court that defendants are correct in both of their contentions.

Much has been written by courts throughout the country as to what constitutes the commission of an offense "in the presence" of an arresting officer. But all of them agree that if the officer by his presence becomes informed through any of his senses of material elements of the particular crime, which has a tendency to produce in the minds of a reasonably prudent person that it is morally certain that the principal fact occurred, the offense may be considered as having been committed in his presence, although he did not discover all of the elements necessary to the completion of the offense, and which is universally held to be true when the arrested person admits or confesses to the officer his violation of the law and other elements necessary to complete the offense. Many cases sustaining that statement are listed in Vol. 33 Words and Phrases, Perm. Ed., beginning on page 431, under the heading of "Presence of Officer." In answering contention (a) of plaintiff, this court, in the case of Goins v. Hudson, Jailor, 246 Ky. 517, 55 S. W. (2d) 388, 390, in discussing the same question, said: "It is true that under section 36, Criminal Code of Practice, a peace officer may make an arrest without a warrant only when a public offense is committed in his presence, or when he has reasonable grounds for believing that the person arrested has committed a felony. But, in view of other statutes, it has long been the rule that a peace officer who arrests one for being drunk or disorderly in his presence is not liable in an action for false arrest and imprisonment if the person arrested is actually drunk or disorderly in his presence, or he had reasonable grounds to believe, and did believe in good faith, that the person arrested was drunk or disorderly in his presence. Easton v. Commonwealth, 82 S. W. 996, 26 Ky. Law Rep. 960; Weaver v. McGovern, 122 Ky. 1, 90 S. W. 984, 28 Ky. Law Rep. 883; Commonwealth v. Reed, 208 Ky. 587, 271 S. W. 674; Louisville & N. R. Co. v. Creech, 218 Ky. 147, 291 S. W. 15." Other domestic cases are cited approving by analogy what was said in that (Goins) case.

In the case of Patterson v. Com., 206 Ky. 258, 267 S. W. 160, the arresting officer was searching for another violator of the law. The appellant, Patterson, in that case approached the officer, who said to him, "You are not the man I am looking for." However, the officer smelled liquor and discovered a pair of saddlebags across Patterson's saddle and asked him what it was that smelled so loud, when he (Patterson) answered: "Boys, you have got me," and offered them a half-gallon of whiskey to release him. We held that the offense was committed in the presence of the officer, based, as will be seen, on what he discovered by the sense of smell, plus the admission of the guilty offender. See also Stanley on Instructions to Juries, page 472, section 384, and the case of J. J. Newberry Co. v. Judd, 259 Ky. 309, 82 S. W. (2d) 359.

Of the same tenor is the case of Ingle v. Com., 204 Ky. 518, 264 S. W. 1088, where we gave a definition of what was necessary to establish the commission of an offense in the presence of an arresting officer. The domestic cases cited list other opinions of this court to the same effect, all of which hold that an officer may arrest a misdemeanant without a warrant upon the ground that the offense was committed in his presence when he has "reasonable grounds to believe, and did believe in good faith" that the person arrested was guilty, but the foundation for such reasonable belief must be based and deduced from facts obtained by the officer through some one or more of his senses and not from information he may have received from third parties. But information received from the person arrested is sufficient to complete the commission of the offense in the presence of the officer. We therefore conclude that in this case in the light of the facts and circumstances as outlined, the act of fishing was committed by plaintiff (who admitted that he had no license) in the presence of defendants and that they were not required to know that the admitted fishing was done at a place or under circumstances where a license was not required under some exception contained in the statute.

Moreover, we are not at all convinced that plaintiff was a lessee of Jones as his lessor of the premises from which he now claims that he caught the fish which the officer discovered in his boat. He testified that he does not now reside in the dock which Jones had constructed

on the shoreline of his small seven-acre tract of land, but that he lived in Altoona. There was never any writing, so far as the record shows, creating any leasing of the premises from Jones by plaintiff, but only a verbal license or permission revocable at any time to fish from the water line of Jones' premises was given to plaintiff. If such an arrangement constituted him a lessee within the meaning of the exempting excerpt supra from the statute, then every landowner whose land bordered any of the public waters in the Commonwealth could extend verbally such an indefinite privilege to as many persons as he saw proper who would be excused from complying with the provisions of the statute enacted under the police power of the Commonwealth for the protection of fish and game. The protecting features of the statute would in such a case become practically repealed. On the contrary, it is our conclusion that to become a lessee protected by the terms of the statute, some sort of tenancy issuing out of real estate must be obtained by the alleged lessee from his lessor giving the former some sort of exclusive privilege over the portion of the estate so leased and that a bare verbal license revocable at any time to engage in the privilege of fishing from the shore is not such a lessee as the statute contemplates.

The points discussed could be made more convincing through extended elaboration, but we are confident that what we have already said is sufficient to have authorized the court to sustain defendants' motion for a peremptory instruction in their favor, but which the court overruled.

Wherefore, for the reasons stated the judgment is reversed with directions to set it aside and to sustain the motion for a new trial, and if the evidence at another trial, if one be had, is in substance the same as that contained in the record, the peremptory instruction should be given.