[Crim. No. 4001.   Second Dist., Div. Two.   July 9, 1946.]

THE PEOPLE, Respondent, v. ERNEST J. GATLIN,
Appellant.

Maurice A. Gleason for Appellant.

Robert W. Kenny, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondent.

McCOMB, J.—From a judgment of guilty of grand theft, after trial before the court without a jury, defendant appeals. There is also an appeal from an order denying his motion for a new trial.

The evidence being viewed in the light most favorable to

the People (respondent), and pursuant to the rules set forth in *People* v. *Pianezzi*, 42 Cal.App.2d 265, 269 [108 P.2d 732], the essential facts are:

At about noon on September 19, 1945, the complaining witness, Mr. Gabriel, cashed two liberty bonds and two pay checks at the Security First National Bank in San Pedro. He then started toward the postoffice and at the intersection of Seventh and Pacific Streets he met a brown skinned man, hereinafter referred to as "B.S.M." This man engaged Mr. Gabriel in conversation. At the same time he noticed defendant standing near by. B.S.M. had what appeared to be $8,000. He seemed to be ignorant and illiterate and also acted as though he were drunk. While Mr. Gabriel was talking to him, defendant walked by and B.S.M. called to him, "Hey, you, come here," whereupon defendant joined the group. In the ensuing conversation defendant told B.S.M. not to exhibit his money on the street. As Mr. Gabriel walked toward the postoffice the two men accompanied him. They talked about money and women. When they reached a point about the middle of the south side of Seventh Street between Grand and Pacific Streets, B.S.M. asked the complaining witness to hold his money and when Mr. Gabriel told him to put the money in the bank, B.S.M. stated that he wished to store the money for only two or three days. Thereupon he offered to give Mr. Gabriel $1,000 if he would hold his money for three or four days and added "to prove your good faith, have you got $1000?" to which Mr. Gabriel gave an affirmative answer. B.S.M. then said, "You draw that $1000 and put it with mine and take it all home and keep it until I call for it." At first Mr. Gabriel refused to draw any of his own money out of the bank but said he would hold the $8,000 for B.S.M. to whom he would give his address. Thereafter defendant persuaded Mr. Gabriel to draw his own money from the bank saying, "I don't know if he is half crazy or drunk, but he has got about $8000 on him. Why don't you keep it?" When Mr. Gabriel stated his intention to leave, defendant said, "Wait a minute, don't leave," and urged Mr. Gabriel as follows:

"Go ahead and draw it, we might as well get it. Somebody else will knock him in the head and take his money. He wants you to take it and keep it three or four days for $1000.00. . . . That is easy money and we will split the money. . . . He's got all his money, about $8000 and he wants you to keep his money. He's offered to give you $1000. Go ahead and draw

your money and prove to him you are in good faith, and take it on home and we will split it. You can give me as much as you want."

As a result of defendant's persuasion, the complaining witness accompanied by defendant went to the bank and withdrew $1,000 from his savings account. This sum was in two $500 bales of bills. Mr. Gabriel accompanied by defendant took the $1,000 back to where B.S.M. was waiting on Grand Street. The three men then sat on the curb. Taking his money from his pocket, B.S.M. stated to Mr. Gabriel, "I want you to put your money with mine and, you are going to have all the money." Mr. Gabriel added his $1,000 to the top of the roll. B.S.M. then tied the roll and handed it to Mr. Gabriel who put it in his pocket. Whereupon B.S.M. objected to Mr. Gabriel putting the money in his pocket stating, "I don't want you to keep it in your pocket" and, "I want you to put it in here." Mr. Gabriel took the money out of his pocket, surrendered it to B.S.M. and watched him tie it in a handkerchief which supposedly contained $9,000. B.S.M. then handed it to Mr. Gabriel, who gave his address to the defendant and then proceeded to the postoffice where he untied the handkerchief and found that it did not contain any money but merely a paper sack and newspaper wadding. Since then the complaining witness has seen neither his own $1,000 nor the $8,000 possessed by B.S.M.

Defendant urges reversal of the judgment on two propositions which will be stated and answered hereunder seriatim:

First: *There was not any substantial evidence that defendant (1) was a participant in the crime, (2) and the "brown skinned man" were working in conjunction, (3) profited at the expense of the complaining witness, (4) intended to deprive the complaining witness of his property.*

This proposition is untenable.

■ (1) The complaining witness, Mr. Gabriel, gave direct testimony that defendant was present at the time mentioned in the statement of fact *supra;* likewise Officer Hamilton testified that defendant told him in the presence of Sergeant Dorsey that he had seen Mr. Gabriel on the southwest corner of Seventh and Pacific Streets on September 19, 1945. Similar testimony was given by Sergeant Dorsey. This testimony, if believed by the trial judge, was sufficient to sustain the finding that defendant participated in the crime.

(2) From the facts set forth above the trial judge was jus-

tified in inferring that defendant and the "brown skinned man" were "confidence men" or "bunco artists" who had engaged in the above nefarious scheme for the purpose of cheating the gullible complaining witness. (See *In re Clark,* 34 Cal.App. 440, 441 [167 P. 1143]; *People* v. *Rial,* 23 Cal. App. 713, 717 [139 P. 661]; *People* v. *Malone,* 20 Cal.App. 2d 1, 6 [66 P.2d 216]; *People* v. *Hennessey,* 201 Cal. 568, 571 [258 P. 49]; *People* v. *Santora,* 51 Cal.App.2d 707 [125 P.2d 606]; *People* v. *Shaughnessy,* 110 Cal. 598, 604 [43 P. 2].)

■ (3) Grand theft is committed when a person with a preconceived design to appropriate another's property to his own use obtains possession of it by fraud or trickery, and such property need not be used by the thief. (*People* v. *Rial,* 23 Cal.App. 713, 719 [139 P. 661]; *People* v. *Cook,* 10 Cal.App. 2d 54, 57 [51 P.2d 169]; *People* v. *Edwards,* 72 Cal.App. 102, 116 [236 P. 944].)

■ (4) It is the function of the trier of fact from all the evidence to determine the intent with which defendant deprived Mr. Gabriel of his property. Clearly the facts hereinbefore set forth justified the inference that defendant intended to wholly and permanently deprive the complaining witness of his money.

Second: *The evidence established an alibi for defendant.*

■ In view of the testimony set forth under proposition First (1), there is no merit in defendant's contention that he established an alibi. His testimony to the effect that he was not present at the time the crime was committed was contradicted by his admission to the police officers, and by the testimony of the complaining witness which, as indicated above, the trial judge believed, while he disbelived defendant's testimony. The finding of the trial court on conflicting evidence that defendant did not establish an alibi is of course binding upon this court.

Since the record is free from error the judgment and order are and each is affirmed.

Moore, P. J., and Wilson, J., concurred.