[Crim. No. 4023. Second Dist., Div. One. Nov. 1, 1946.]

THE PEOPLE, Respondent, v. HUBERT D. PALMER et al., Defendants; VIRGINIA McDAVID, Appellant.

Walter L. Gordon, Jr., for Appellant.

Robert W. Kenny, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondent.

YORK, P. J.—Defendants were jointly charged in an information containing two counts with the crime of robbery, and the jury found them guilty of robbery of the first degree. From the judgment of conviction which followed, and also from the order denying the motion for a new trial, defendant Virginia McDavid alone has perfected this appeal.

It is here urged (1) that the evidence is insufficient to justify the judgment of conviction; and (2) that the court committed prejudicial error in the giving of instructions.

The record discloses that about 4 a. m. of November 24, 1945, two sailors, Larry L. Tyson and James E. Banks, were standing near a service station at 9th Street and Central Avenue in the city of Los Angeles, waiting for a trolley to return them to their naval base at Long Beach. At that time defendants were the sole occupants of a Buick automobile standing in the service station with appellant McDavid at the wheel. James Moore, the attendant on duty at the station, testified that a Buick came into the station sometime between 2:30 and 3:30 a. m., on the date mentioned, at which

time a group of sailors were standing on the corner 30 or 40 feet distant from appellant's automobile. Appellant called to the boys on the corner, and Tyson recalled that more than two of them walked over to the car. The attendant Moore did not hear appellant call to the boys, but he saw Tyson and some other boys go over to the Buick. Appellant asked Tyson where he was going and was told "Long Beach," whereupon she offered a free ride to Long Beach in her car. The two sailors got in and sat in the back seat. Moore changed the battery in the Buick and made a memorandum of the license number of the car together with the name and address of the owner. He saw Tyson and Banks get into the car and saw them sitting in the back seat when the car drove from the station with appellant at the wheel and defendant Palmer sitting beside her. Shortly after they started off, appellant asked the boys, "Wouldn't you all like to go out and have some fun before you go to Long Beach?", to which they replied, "No, we weren't going out to have any fun, We haven't enough money." Upon appellant's suggestion, Banks took off his Navy pea jacket, climbed into the front seat and sat between appellant and defendant Palmer, whereupon appellant said, "We will go to one of my girl friend's house, call up one of my girl friends, and we will go out and have fun." The boys told her "she didn't need to do that, we didn't have enough money for that, and she asked us how much money we had." Tyson told her he had $5.00 and appellant said 'You all no got enough money to go anywhere and have fun. You can get out here, if you want to." Meanwhile, appellant drove along without making a stop, and defendant Palmer talked to Banks about a certain watch, which Tyson said he saw Banks wearing when they got in the Buick. Defendant asked whether Banks would like to pawn his watch and Banks answered in the negative. Appellant stopped the automobile near Central Avenue and 27th Street, at which time the defendant Palmer, Tyson and Banks got out, Banks and Palmer preceding Tyson. The witness Tyson testified that defendant Palmer drew a gun on them and said "Well, I am just going to take the five dollars you all have," and "snapped" the five dollars out of Tyson's hand. The complaining witness Banks testified that defendant Palmer "puts a gun in my ribs and he takes my watch and five dollars and draws over on Pico. She (appellant) was driving. . . . She

asked how much money I had. I told her I didn't have but five dollars . . . the fellow asked did I want to pawn my watch . . . I told him I didn't want to pawn it, to pawn my watch, so then he got out of the car . . . and we gets out too. . . . That is when he put the gun in my ribs.'' Said witness also testified that after defendant Palmer took his watch, he jumped in the car and drove off; that appellant was ''under the steering wheel.'' Tyson testified that he surrendered the $5.00 because he was afraid of Palmer's gun. While Palmer was taking the watch and the money from the two sailors beside the Buick on 27th Street near Central Avenue, appellant was sitting behind the steering wheel watching Palmer and ''told him to hurry up, called his name, and told him to hurry up, to make it snappy.'' She drove off as soon as Palmer jumped into the car with the loot taken from the two boys. Banks left his pea jacket in the car with his name stenciled on the inside. This jacket was later recovered from appellant's automobile by the police. The two sailors returned to the service station at 9th and Central where they obtained the license number of appellant's car from the attendant Moore, who corroborated this fact, among others, and who also identified appellant as the person who took Tyson and Banks into her car.

Officer Collins apprehended appellant and Palmer when they drove up to the former's home around 8 that morning, and although he searched Palmer and the car, no gun was found, nor was it found on the person of appellant. However, he did find inside the car the sailor's pea jacket with the name J. E. Banks stenciled thereon. At the time of the arrest Officer Collins conversed with appellant and Palmer, who at first denied that any sailors had been in the car at the time in question. Palmer later admitted they picked up two sailors and appellant claimed the pea jacket found in her car belonged to a friend named ''Bennie Barnes.'' When accused, both appellant and Palmer denied having robbed anyone.

Appellant took the stand in her own defense and testified that while at the service station having the battery of her car changed, she sat behind the steering wheel with defendant Palmer seated beside her, and she noticed a group of sailors standing on the corner of Central Avenue and 9th Street; that neither she nor Palmer left the Buick while at

the service station, nor did she call to any of the sailors; that four or five sailors, including Tyson and Banks, walked up to the car and asked for a ride to Long Beach; that she told them she would take them because she was doing nothing but riding about; that whereupon Banks and Tyson entered the back seat of the Buick and a third sailor, who was later identified as Louis Jordan, jumped into the front seat; that after the battery was changed, she gave her name, address and the license number of her car to the attendant and immediately drove the car from the station; that in the front seat, said witness was driving the car, Palmer sat beside her and Louis Jordan sat next the window; while Tyson and Banks sat in the back seat; that such seating arrangement was not changed thereafter; that upon leaving the station, she drove south on Central Avenue, and remarked that it was getting cold and that she would stop at her home for a coat and a drink to warm her up, at which time one of the sailors offered to get her a drink if she would get them some white girls and some marihuana; that Palmer did not participate in this conversation. The witness then testified that she objected to this conversation and stopped the Buick at 27th and Central and asked Banks and Tyson to leave the car; that they complied with her wishes, cursing as they went; that the sailor in the front seat got out of the car and pushed the front seat of the sedanette over to let Tyson and Banks out; that Palmer did not leave the car nor did he speak to Tyson or Banks; that the entire ride from 9th Street to 27th Street along Central Avenue took no more than 12 minutes; that the sailor Jordan returned to the Buick after the other two boys departed; that she, defendant Palmer and Jordan drove to the Avalon Drive-In where some whiskey was bought; that from there they went to appellant's house where they met her friend, Georgia Graves, and had some drinks; half an hour later appellant accompanied by Palmer drove Jordan to his hotel at 41st and Central; that said witness and Palmer drove to the Avalon Shoe Shine Parlor where they remained for 30 minutes before returning to the witness' home, where they were met by the police and informed they were wanted for the robbery of two sailors.

Appellant further testified that Tyson and Banks never told her how much money they had; that she never asked them how much money they had and that she knew nothing

about either Tyson or Banks being robbed. At the time of her arrest, she did not tell the police that a third sailor had been in the car, nor that Tyson and Banks had mentioned marihuana and white women. She explained that she had not mentioned these things because she was not asked about them. In fact, appellant first told the police that no sailors had been in her car, and when Officer Collins found the jacket belonging to Banks, she stated that it belonged to a friend of hers, named ''Benny Barney.''

The complaining witness, Tyson, declared that he and Banks were the only sailors in appellant's car during the time in question; that appellant tried to interest him and Banks in some women, but the sailors refused; that no angry words passed between any of the occupants of the car nor did a dispute occur; neither was there any drinking or swearing in the car. Banks and Tyson testified that they did not drink at all during the night of November 23d and the morning of November 24, 1945; that appellant and Palmer had been drinking but there was no liquor in the car. In rebuttal the witness Tyson testified that at no time did appellant state she would have to get either a drink or her coat and at no time did either he or Banks offer appellant a drink if she would furnish them with two sticks of marihuana and some white girls. Tyson denied that he knew what marihuana was or what it was used for; that to his knowledge Banks had not been drinking, nor did Banks stagger, nor did the witness smell any liquor on Banks; that he, himself, did not drink at all.

Appellant contends that ''there is not one bit of evidence in the record to show that she perpetrated the crime of robbery as to either of the complaining witnesses''; and also that the evidence is insufficient to sustain her conviction as an ''aider and abettor.''

In the case of *People* v. *Wilson,* 93 Cal.App. 632, 636 [269 P. 951], where the facts were somewhat similar to those in this case, the court said: ''Section 31 of the Penal Code declares in part that all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense or aid and abet in its commission, or not being present have advised and encouraged its commission, are principals in any crime so committed; and the contention appellant makes regarding the evidence is that even assuming that she was

present at the time and place of the robbery, there was no proof introduced to establish the fact that she aided and abetted in the commission of the crime. We are unable to agree with this contention, for it is well settled that the question of whether or not a person who is shown to have been present at the time and place of the commission of a crime has aided and abetted therein is one of fact for the jury to decide from all the circumstances proved (*People* v. *Woodward*, 45 Cal. 293 [13 Am.Rep. 176] ; *People* v. *Kauffman*, 152 Cal. 331 [92 P. 861] ; *People* v. *Wilson*, 135 Cal. 331 [67 P. 322]) ; and in our opinion the circumstances hereinabove narrated are legally sufficient to warrant the conclusion that appellant had previous knowledge of what was about to transpire and that her object in being present was to divert any suspicion as to their purpose, or to serve as a lookout and to give warning of the approach of anyone seeking to interfere with their enterprise, or to take charge of the automobile, keep the engine running, and to give direct aid to the men in making their escape. Any one of the purposes mentioned would be sufficient upon which to base the reasonable inference that she was aiding and abetting in the commission of the robbery.'' See, also, *People* v. *Jaggers*, 120 Cal.App. 733, 735 [8 P.2d 206] ; *In re Ortiz*, 74 Cal.App.2d 810 [169 P.2d 664] ; *People* v. *Gatlin*, 75 Cal.App.2d 288 [170 P.2d 1013].

As hereinbefore stated, the record reveals evidence which established that appellant called to the complaining witnesses and offered them a free ride to Long Beach; that she thereafter asked them if they would not like to have some fun before going to Long Beach, and that when they replied they did not have enough money for that purpose, she inquired how much money they had.

Further, appellant brought the car to a stop at 27th Street and Central Avenue where the robbery took place in, or near, her presence, since she remained in the automobile seated behind the steering wheel; that she watched defendant Palmer's actions and during the time he was relieving his victims of their money and watch at the point of a gun, appellant called to said Palmer by name, urging him to hurry up and make it snappy and drove off immediately upon Palmer's return to the car with his loot. This evidence was amply sufficient upon which to base an inference that appellant aided and abetted in the robbery by providing a quick getaway to avoid apprehension.

■ Appellant urges prejudicial error by the court in the giving of two instructions:

, 1. "The Court has given you instructions embodying such rules of law as may be necessary to assist you in arriving at a verdict. As to some of these instructions, their applicability depends upon the light in which you view the evidence.

"The fact that the Court has given you instructions as to particular rules of law must not be taken by you as an indication that such rules are necessarily applicable to the cause on trial, or as indicating that the Court considers them necessarily applicable. Where there is a conflict of evidence, the question as to whether a particular rule of law is applicable depends frequently and solely upon the conclusion as to what the facts are, and the jury are the sole judges of the facts.

"If any instruction is applicable only if a particular situation or state of facts exists, and if you find that no such situation or state of facts exists, then you should not take such instructions into consideration in your deliberations."

As to this instruction, appellant claims that "the jury was told in so many words that it was not necessary for them to consider certain instructions if they found they were not applicable to the facts they found to exist."

The precise instruction here complained of was given in the case of *People* v. *Spraic*, 87 Cal.App. 724 [262 P. 795]. In sustaining the propriety of this instruction, this court stated at page 732: "Defendant complains of this instruction and discusses it at considerable length, his grounds of attack being that thereby the court abdicated its function of declaring the law, repudiated all its other instructions and left the jury to determine for themselves what constitutes the law applicable to the case. We do not think the instruction is open to the criticisms thus directed at it by the defendant. It is the duty of a trial court to give instructions on proper request therefor as to the law applicable to any state of facts that may be logically deducible from any of the evidence, regardless of the weight or credibility of that evidence, which are within the sole province of the jury; and this duty the court performed in this case. But when the jury, in the exercise of their function of passing on the evidence, reject the evidence tending to prove a fact and conclude that the fact does not exist, there is no longer any occasion for them to consider or apply to the case any instruction as to the legal effect of the existence of that fact. The instruction com-

plained of did no more than inform them of this obvious rule and the giving of it, although possibly superfluous, was not error.'' Likewise, in the instant situation, no prejudicial error resulted from the giving of this instruction.

■ 2. The other instruction which appellant questions reads: "If in these instructions, any rule, direction or idea be stated in varying ways, no emphasis thereon is intended by me, and none must be inferred by you. For that reason, you are not to single out any certain sentence, or any individual point or instruction, and ignore the other, but you are to consider all the instructions and as a whole, and to regard each in the light of all the others." Appellant urges that this instructed the jury "in so many words that they were not to single out any certain instruction and ignore the other, but were to consider all the instructions as a whole."

It is well settled law that "Instructions are to be considered as a whole. (*People* v. *Countryman*, 115 Cal.App. 36 [300 P. 871]; *People* v. *White*, 35 Cal.App.2d 61 [94 P.2d 617].)" *People* v. *Black*, 45 Cal.App.2d 87, 100 [113 P.2d 746].

It was stated by this court in *People* v. *Zammora*, 66 Cal. App.2d 166, 226 [152 P.2d 180]: "Appellants challenge the correctness of several instructions given to the jury, but when we remember that instructions should not be considered singly, but in their entirety (*People* v. *Macken*, 32 Cal.App.2d 31 [89 P.2d 173]), we are persuaded from a reading of all of the instructions given that no substantial rights of the appellants were invaded in the exposition of the law as contained in the instructions given." An examination of all of the instructions given in the instant cause reveals that the jury was fairly and fully instructed as to the law applicable to the facts presented by the evidence and that no substantial rights of appellant were invaded thereby.

For the reasons stated, the judgment and order appealed from are, and each of them is, affirmed.

Doran, J., and White, J., concurred.