### Commonwealth v. Chaplin.

February 27, 1948.

Rehearing denied June 25, 1948.

Eldon S. Dummit, Attorney General, and Richard L. Garnett for appellant.

W. E. Jones for appellee.

OPINION OF THE COURT BY JUDGE REES—Certifying the law.

Charlie Chaplin was convicted in the Barren County Court of the offense of unlawfully transporting intoxicating liquor in local option territory. He appealed to the Barren Circuit Court where a jury was waived, and the law and facts were submitted to the court. The trial judge found that the search of defendant's car on the public highway by the arresting officers without a search warrant was illegal, and that the evidence offered by the Commonwealth as to the whisky found in the car at the time of the arrest should be excluded. The defendant was adjudged not guilty, and the Commonwealth, being dissatisfied with the ruling of the court, has appealed for a certification of the law. We adopt the Commonwealth's statement of facts which is substantially the same as the stipulation of facts agreed upon by the parties at the trial, and which the appellee concedes is correct:

The appellee, Charlie Chaplin, was operating a taxicab belonging to Clyde Chaplin in Glasgow, Barren County, Kentucky, on or about the 11th day of September, 1946. The appellee with a passenger by the name of Welby Hurt left Glasgow on the above date and drove to a liquor dispensary in Warren County. Barren County is a local option county and Warren County is not. The field agents for the Alcoholic Control Board of Kentucky had a report on the liquor store where appellee's taxicab had gone, to the effect that it was selling in large quantities to persons doing bootleg business in dry counties. As a result of that report two field agents of the Alcoholic Control Board, Bert Harper and Clell Tarter, Jr., were, upon the day in question, secreted along a side road adjacent to this liquor store for the

purpose of checking on persons that might be running liquor into the dry territory. While the two control agents were thus secreted, Charlie Chaplin drove up in his taxicab, drove around to the back of the liquor store and parked. He and his passenger, Welby Hurt, went into the back door of the liquor store. Bert Harper remained in the position where he could clearly see the back door and could watch the movements of the persons entering and leaving. Clell Tarter, Jr., went around to the front of the store, entered the store by the front door and bought a one-half pint of liquor. While in the store Tarter could see the appellee and Hurt in the back room and could hear the rattling of bottles and saw Chaplin and Hurt go out the back door. Hurt carried a grip and Chaplin carried a large sack, so full that the top could not be closed. Tarter could not see the contents of either the sack or the grip, except to know they were bottles. Chaplin then came back into the store and got a second sack. Tarter made inquiry from the operator of the liquor store and learned that nothing was kept or sold in the store except liquor and wine, no beer was sold and no soft drinks were sold nor was any other kind of bottled goods sold. Harper, waiting on the outside, saw Chaplin and Hurt come out of the back door of the liquor store, Hurt put a cloth grip in the back seat and Chaplin placed a large sack on the front seat filled to such an extent that the top would not close. Chaplin then went back into the liquor store and got a second sack which was placed on the back seat. Chaplin and Hurt then got into the taxicab, both sitting on the front seat with the large paper bag between them. Harper could not see the contents of the bags, except to see that they were bottles. The taxi drove toward Glasgow into Barren County. Harper and Tarter got into their automobile and followed the taxicab, keeping it in sight at all times. The taxi made no stops after leaving the liquor store. After the taxicab had crossed into the local option territory of Barren County the alcohol agents pulled in front of the taxicab. The taxi stopped, Harper and Tarter started walking back to the cab. When they got within a few feet of the taxicab they could see through the window that the sack on the front seat contained whisky. The sack was so full that the top could not be closed and the liquor was

in plain view. The sack on the back seat was closed. The contents of the grip and the sack on the back seat could not be seen through the window except to tell that they did contain bottles. The officers had no search warrant for the taxicab. Other than having knowledge of the transportation of this liquor by what they had seen in the liquor store, and the liquor they saw through the windows of the car as they approached it, the officers knew of no law violation by the appellee. As the two officers approached the cab, Chaplin opened the door. The officers then asked Chaplin who the liquor belonged to. He stated that a part of it belonged to him and a part of it belonged to Hurt. Hurt made no responses. The officers arrested appellee and Hurt and then removed the sack and grip from the back seat and the sack from the front seat and discovered that they contained thirty-six one-half pints of whisky.

It is argued on behalf of the Commonwealth that the trial judge erred in excluding the evidence disclosed by the search for two reasons: (1) There is a distinction between an automobile in reference to search and seizure and premises that are private habitations and the search without warrant of an automobile for contraband articles, if the search is upon probable cause, is not a violation of section 10 of our Constitution which provides that "the people shall be secure in their persons, houses, papers and possessions, from unreasonable search and seizure;" and (2) the evidence shows that a misdemeanor was committed in the presence of the officers and they had the right to arrest appellee and make the search without a warrant.

In construing section 10 of our Constitution, this court has held that an automobile may not be stopped on the highway and searched without a warrant unless a misdemeanor is being committed in the presence of the officer or he has probable cause to believe that a felony has been committed. In Settles v. Commonwealth, 294 Ky. 403, 171 S. W. 2d 999, 1000, two officers, while attempting to apprehend two deserters from the army, saw Arthur Settles drive to the edge of the highway in his covered truck and park it near a church. The officers knew that Settles' reputation was that of one who illegally sold liquor. They approached the truck to ascertain if the persons sought were in the ve-

hicle, and when they turned their flashlights into the truck they saw a cardboard box with a beer label thereon which excited their suspicion. Without Settles' consent they took possession of the box, opened it, and found it contained fifteen pints of beer. This court held that the evidence was obtained by an unlawful search and should have been excluded. The court said:

"Under sec. 10 of our Constitution as construed in Youman v. Com., 189 Ky. 152, 224 S. W. 860, 13 A. L. R. 1303, the testimony of the officers as to what they found in appellant's truck was incompetent as the search was made without a search warrant and without his consent. We have many times written that sec. 10 protects a citizen from an officer searching his person, car, truck or portable possessions on the highway without a search warrant unless an offence has been committed in the officer's presence, and that the evidence obtained by such an unlawful search is not competent to sustain a conviction. Marsh v. Com., 255 Ky. 484, 74 S. W. 2d 943; Adkins v. Com., 202 Ky. 86, 259 S. W. 32; Helton v. Com., 195 Ky. 678, 243 S. W. 918."

The only domestic case apparently to the contrary is Commonwealth v. Warner, 198 Ky. 784, 250 S. W. 86, but there the question as to the right of the officer to stop the automobile on the highway and make a search was neither raised nor discussed. The whisky which was being unlawfully transported was exposed to view and could be seen by persons within a reasonable distance from the automobile. It was merely held that where the object is in plain view no search is necessary. In Marsh v. Commonwealth, 255 Ky. 484, 74 S. W. 2d 943, it was said:

"A search of the automobile was made without the consent of the appellant and on mere suspicion. No offense was committed in the presence of the officer and appellant was not arrested until after the search had been made and the liquor discovered. * * *

"We have consistently held that it is unlawful for an officer to hold up a citizen on the highway for search of his person, or his portable possessions, without a search warrant or unless an offense has been committed in the officer's presence."

Counsel for the Commonwealth admit that this is now the rule in this state, but it is insisted that it should be abandoned and the rule followed by the Federal courts should be adopted. The Federal rule was announced in Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790, and Husty v. United States, 282 U. S. 694, 51 S. Ct. 240, 75 L. Ed. 629, 74 A. L. R. 1407, where it was said that the Fourth Amendment to the Federal Constitution does not prohibit the search without warrant of an automobile for liquor illegally transported or possessed if the search is upon probable cause. The decisions in these cases turned upon the interpretation of the search and seizure provisions enacted by the Congress for enforcement of the National Prohibition Act, 27 U. S. C. A. sec. 1 et seq. Their soundness appears to have been questioned by the Supreme Court in the recent decision in United States v. Di Re, 332 U. S. 581, 68 S. Ct. 222, 224, wherein the court said:

"Obviously the Court should be reluctant to decide that a search thus authorized by Congress was unreasonable and that the Act was therefore unconstitutional. In view of the strong presumption of constitutionality due to an Act of Congress, especially when it turns on what is 'reasonable,' the Carroll decision falls short of establishing a doctrine that, without such legislation, automobiles nonetheless are subject to search without warrant in enforcement of all federal statutes. This Court has never yet said so. The most that can be said is that some of the language by which the Court justified the search and seizure legislation in the Carroll Case might be used to make a distinction between what is a reasonable search as applied to an automobile and as applied to a residence or fixed premises, even in absence of legislation."

It is argued in the present case that a rule such as the one recognized in the Carroll and Husty cases is necessary for the enforcement of the law, but, as said in the Di Re case:

"We meet in this case, as in many, the appeal to necessity. It is said that if such arrests and searches cannot be made, law enforcement will be more difficult and uncertain. But the forefathers, after consulting the

lessons of history, designed our Constitution to place obstacles in the way of a too permeating police surveillance, which they seemed to think was a greater danger to a free people than the escape of some criminals from punishment."

Probable cause for seizure cannot be searched for by police officers and left for them to determine, for the Constitution provides for the intervention of judicial determination of probable cause. The protection afforded by section 10 of our Constitution consists in requiring that probable cause for searching any place or seizing any person or thing shall be determined by a neutral judicial officer instead of by the often over-zealous police or enforcement officer. In United States v. Lefkowitz, 285 U. S. 452, 464, 52 S. Ct. 420, 423, 76 L. Ed. 877, 82 A. L. R. 775, the Supreme Court said:

"* * * the informed and deliberate determinations of magistrates empowered to issue warrants as to what searches and seizures are permissible under the Constitution are to be preferred over the hurried action of officers and others who may happen to make arrests. Security against unlawful searches is more likely to be attained by resort to search warrants than by reliance upon the caution and sagacity of petty officers while acting under the excitement that attends the capture of persons accused of crime. * * *"

We are not disposed to depart from the rule announced in the Settles, Marsh and similar cases.

We think that counsel for the Commonwealth are on sound ground, however, when they assert that the trial judge erred in excluding the evidence disclosed by the search as the other evidence shows that a misdemeanor was being committed in the presence of the officers and they had the right to make the search without a warrant. An arrest by an officer for a misdemeanor committed in his presence cannot be made on mere suspicion, but he may act on knowledge coming to him through one or more of his senses, and where the conduct of a person or the surrounding circumstances are such that any reasonable person would conclude that a misdemeanor was being committed the officer may make an arrest without a warrant. In Elswick v. Common-

wealth, 202 Ky. 703, 261 S. W. 249, the defendant was throwing balls at a doll rack; his exertions raised the skirt of his coat and caused it to hang on a bottle in his hip pocket. The bottle contained a white liquid, which was visible to those behind him. An officer who was present arrested him for having intoxicating liquor in his possession. This court held that the arrest without a warrant and the subsequent search were lawful because an offense was committed in the officer's presence, and the facts and circumstances were sufficient to apprise him of that fact. In Spires v. Commonwealth, 207 Ky. 460, 269 S. W. 532, two officers were sitting in an automobile on a public road when the defendant passed them on horseback. On the saddle under the defendant was a sack upon which the officers saw the imprint of glass jars. As the defendant rode by the officers heard the familiar sound made by liquid in a jar when being jostled and smelled the odor of whisky. It was held that the arrest and search of the defendant without a warrant was not unlawful.

The facts and circumstances of the present case pointed much more strongly to a misdemeanor being committed in the presence of the officers than did those in the two foregoing cases. The officers had been informed that whisky was being purchased at the liquor store in Warren County and transported into Barren County and illegally sold there. They saw the appellee drive up to the back door of the liquor store, go in and bring out a large quantity of bottles and place them in his car. They ascertained that no bottled goods were sold at the store except whisky. When they saw appellee drive over the line into Barren County with the bottles in his car, the facts and circumstances were sufficient to apprise them that the offense of unlawfully transporting intoxicating liquor in local option territory was being committed in their presence. It follows that the trial court erred in discharging appellee.

The foregoing is certified as the law.