[L. A. No. 21949. In Bank. Jan. 25, 1952.]

WARREN COVERSTONE, a Minor, etc., Appellant, v. L. N. DAVIES, Individually and as Deputy Sheriff, etc., et al., Respondents.

[L. A. No. 21950. In Bank. Jan. 25, 1952.]

WILLIAM L. MOCK, a Minor, etc., Appellant, v. L. N. DAVIES, Individually and as Deputy Sheriff, etc., et al., Respondents.

[L. A. No. 21951. In Bank. Jan. 25, 1952.]

ROLLA D. MOCK et al., Appellants, v. L. N. DAVIES, Individually and as Deputy Sheriff, etc., et al., Respondents.

C. Paul DuBois and R. D. Mock for Appellants.

Harold W. Kennedy, County Counsel (Los Angeles), Wm. E. Lamoreaux, Deputy County Counsel, H. Burton Noble, City Attorney (Pasadena), Frank L. Kostlan, Assistant City Attorney, Robert E. Michalski, Deputy City Attorney, Crider, Runkle & Tilson, Donald Ruppe and Anderson, McPharlin & Conners for Respondents.

SPENCE, J.—Warren Coverstone and William L. Mock, by their respective guardians *ad litem*, brought actions against the sheriff of Los Angeles County and five of his deputies; the city manager, chief of police and three police officers of the city of Pasadena; and their respective sureties; charging (a) false arrest, (b) malicious prosecution, (c) assault and battery, and (d) conspiracy and trespass, based upon the arrest of these plaintiffs and their subsequent trial wherein they were acquitted. Rolla D. Mock and Velma M. Mock, the parents of William L. Mock, also brought an action against the same defendants for an alleged violation of their right of privacy predicated upon the publicity attendant upon the arrest and trial of their son. The three cases were consolidated for trial. At the close of plaintiffs' cases, nonsuits were granted as to all defendants on their motions therefor. Plaintiffs have appealed from the judgments entered accordingly.

Plaintiffs contend that the nonsuits were improper because they had made out prima facie cases against all defendants. Viewing the evidence in the light most favorable to plaintiffs and disregarding conflicts, in accordance with the settled rule in testing the propriety of nonsuits (*Lawless* v. *Calaway,* 24 Cal.2d 81, 85 [147 P.2d 604]; *Lashley* v. *Koerber,* 26 Cal.2d 83, 84-85 [156 P.2d 441]; *McCurdy* v. *Hatfield,* 30 Cal.2d 492, 493 [183 P.2d 269]), we have concluded that plaintiffs' contentions cannot be sustained, and that the judgments of nonsuits were therefore proper.

On January 17, 1947, a group of students from Pasadena Junior College had gathered near the intersection of Sierra Madre Boulevard and Sierra Madre Villa in Los Angeles County. Their purpose was to view a "hot-rod" race. Plaintiffs Warren Coverstone and William Mock were in the group,

but claimed upon the trial that they did not know that a race had been proposed or was in progress. Defendants Mansell and Hoskins, two of the deputy sheriffs involved, arrived on the scene in a patrol car and ordered the group to stay together. Shortly thereafter these officers were reinforced by Captain Cook and Deputy Davies of the sheriff's office and Officer Frakes and two other uniformed officers from the Pasadena City Police.

At the behest of Officer Frakes, the students were taken into custody and escorted to the sheriff's Altadena substation. There Coverstone and Mock were segregated from the group because they were over 18 years of age, and were taken to the city jail by Deputies Mortenson and Knezevich. The youths were received at the city jail and conducted through the usual procedure, including booking, photographing, and fingerprinting. They were searched and their personal belongings were removed. After several hours they were released upon their own recognizance, and their personal belongings were returned. On January 20, 1947, they were arraigned on a complaint signed by defendant Davies, which charged violation of Penal Code, section 407 (unlawful assembly). They pleaded not guilty, and were subsequently tried on the charge and acquitted.

Plaintiffs contend that the above-recited facts are sufficient upon which to predicate a cause of action for unlawful arrest, in that the arrests were made without a warrant and the criminal proceeding terminated in a verdict of not guilty. ■ While for the purposes of pleading, it has been held that the illegality of an arrest is presumed upon allegations of an arrest without a warrant and a subsequent confinement (*Kaufman* v. *Brown*, 93 Cal.App.2d 508, 512 [209 P.2d 156] ; *Mackie* v. *Ambassador Hotel & Inv. Corp.*, 123 Cal.App. 215, 221 [11 P.2d 3]) such presumption cannot warrant submission of a cause to the jury where as here the record demonstrates the legality of the arrest. ■ The fact that plaintiffs Coverstone and Mock were exonerated in the criminal proceeding has no bearing upon the legality of the arrest. (*Cf. Neves* v. *Costa*, 5 Cal.App. 111, 118 [89 P. 860] ; *Wilson* v. *Loustalot*, 85 Cal.App.2d 316, 325 [193 P.2d 127], to the effect that the finding of guilt in the subsequent criminal proceeding cannot legalize an arrest unlawful when made. The converse would appear to be equally true.) Since it is settled that a peace officer may lawfully make an arrest for a public offense committed or attempted in

his presence (Pen. Code, § 836), the critical question presented in this case is whether the acts done in the presence of the arresting officer justified the arrests being made without a warrant.

It is not disputed that the group was assembled to view a "hot-rod" race. Such illegal purpose renders the action of the group knowingly participating therein an unlawful assembly within the meaning of section 407 of the Penal Code. When the officers arrived upon the scene, they had the authority to arrest all those engaged in the commission of the unlawful act, and in our view they were entitled to act on reasonable appearances in determining who were parties to the offense. It is patent that the officers acted upon probable cause in arresting Mock and Coverstone as members of the unlawful assembly. Such being the case, the arrests were lawful as being arrests for acts committed in the officers' presence.

Thus as was said in *Garske* v. *United States,* 1 F.2d 620, 622, a search and seizure case: "It is the well-established doctrine now throughout the United States that for a crime, which they have probable cause to believe is being committed in their presence, though it be a misdemeanor, duly authorized peace officers may make an arrest without a warrant." Or to state the same proposition in another fashion, a public offense is committed in the presence of an officer within the meaning of a statute such as Penal Code, § 836, when "circumstances exist that would cause a reasonable person to believe that a crime has been committed in his presence." (*Ryan* v. *Conover,* 59 Ohio App. 361, 364 [18 N.E.2d 277].) Such rule, stated in the one form or the other, is consistently followed in the federal courts (*United States* v. *Wiggins,* 22 F.2d 1001, 1002; *Peru* v. *United States,* 4 F.2d 881, 883; *United States* v. *Stafford,* 296 F. 702, 704-705) and in many state courts (*State* v. *Reynolds,* 101 Conn. 224, 229 [125 A. 636]; *Hill* v. *Day,* 168 Kan. 604 [215 P.2d 219, 224]; *Commonwealth* v. *Chaplin,* 307 Ky. 630, 636 [211 S.W.2d 841]; *Giannini* v. *Garland,* 296 Ky. 361, 366 [177 S.W.2d 133]; *Cave* v. *Cooley,* 48 N.M. 478, 481-482 [152 P.2d 886]; *People* v. *Esposito,* 118 Misc. 867, 872 [194 N.Y.S. 326]; *Bock* v. *City of Cincinnati* and *Tapp* v. *City of Cincinnati,* 43 Ohio App. 257, 261-263 [183 N.E. 119], error dismissed, 124 Ohio St. 666, 667 [181 N.E. 879, 888]; *Noce* v. *Ritchie,* 109 W.Va. 391, 392 [155 S.E. 127]; *State ex rel. Verdis* v. *Fidelity & Cas. Co. of New York,* 120 W.Va. 593, 597 [199 S.E. 884]; *State* v. *Rigsby,* 124 W.Va.

344, 349-350 [20 S.E.2d 906]). With respect to such misdemeanor as is here involved, the rule is embodied in the common law of England (9 Halsbury's Laws of England § 117, p. 88) and has found expression in section 142 of the Restatement of the Law of Torts. ■ As stated in *State* v. *Mullen,* 63 Mont. 50, 58 [207 P. 634]: "Whatever else may be said upon that subject, the utmost that can be exacted of the officer who arrests without a warrant is that the circumstances shall be such that upon them alone he would be justified in making a complaint upon which a warrant might issue."

■ Plaintiffs, however, cite and rely upon language in certain California cases to the effect that the doctrine of probable cause is inapplicable to arrests without a warrant in cases of misdemeanor. (*Ware* v. *Dunn,* 80 Cal.App.2d 936, 943 [183 P.2d 128]; *Collins* v. *Owens,* 77 Cal.App.2d 713, 718 [176 P.2d 372]; *People* v. *Perry,* 79 Cal.App.2d Supp. 906, 908-909 [180 P.2d 465].) The Ware and Collins cases involved situations in which the arrests were made upon the complaint of others. The facts indicated that no offense had been committed in the presence of the arresting officers. The facts in the Perry case, on the other hand, appear to be somewhat similar to those presented here, although it does not appear whether the officer was justified in making any arrest under the circumstances, let alone the arrest in question. However, we deem the language of the Perry case, and any implication in the language of the other cases, to be incorrect insofar as such language denies the application of the doctrine of probable cause to a situation in which an officer makes an arrest for acts done within his presence, which acts would cause a reasonable person to conclude that a public offense is being committed by the person who is arrested.

■ When an arrest for a misdemeanor is made upon the complaint of one other than the arresting officer, it is proper to require the securing of a warrant to justify the arrest. (*Ware* v. *Dunn, supra,* 80 Cal.App.2d 936.) ■ However, to make the same requirement, when the officer sees that in all probability a public offense is being committed in his presence, would be to hamper law enforcement officers in their everyday enforcement of the law. Peace officers would be reluctant to make arrests for fear that they would be held liable for having made an honest and reasonable mistake. It is thus manifest that the day-to-day problems of law enforce-

ment require that peace officers be allowed to act without fear of being held liable upon the facts as they see them, provided such facts would lead a reasonable person to conclude that he was witnessing the commission of a public offense by the person arrested.

Plaintiffs next contend that the facts sustain a cause of action against Captain Cook and Deputy Davies of the Los Angeles county sheriff's office for maliciously instituting the criminal proceeding against plaintiffs Mock and Coverstone. However, it is not contended, nor could it be contended upon the record as here presented, that defendants were acting outside the scope of their authority. Such being the case, the principles announced in *White* v. *Towers*, 37 Cal.2d 727 [235 P.2d 209], are applicable, and the record does not sustain a cause of action on that theory.

Inasmuch as the asserted causes of action for trespass, assault and battery, and conspiracy are dependent upon the unlawfulness of the arrest or the subsequent prosecution, it is patent that these plaintiffs, having failed to establish prima facie cases on the theories of false imprisonment or malicious prosecution, cannot prevail upon the other theories.

Finally, the parents of William Mock contend that defendants are liable for the damages caused them, apart from those caused their son, on the theory that their right of privacy has been violated. There is evidence to show that Mr. Mock is, and was at the time in question, an attorney, licensed to practice in Iowa, and a certified public accountant, licensed to practice in California; that on January 17, 1947, he had a flourishing practice in Pasadena; that the publicity attendant upon his son's arrest and prosecution caused the business to decline, and caused friends to shun the Mocks; that ultimately, Mock was forced to abandon his practice in Pasadena and return to Des Moines, Iowa, where he is presently practicing; and that in addition to his business losses, Mock paid $500 in attorney's fees and $111 in incidental costs of investigation necessary in the defense of his son.

While the right of action for the invasion of one's privacy is recognized in California (*Melvin* v. *Reid*, 112 Cal. App. 285, 289-291 [297 P. 91]; *Kerby* v. *Hal Roach Studios, Inc.*, 53 Cal.App.2d 207, 210 [127 P.2d 577]; *Metter* v. *Los Angeles Examiner*, 35 Cal.App.2d 304, 309 [95 P.2d 491]), it is clear that the principles which govern the right to recover on such theory do not encompass the facts asserted herein. (See *Melvin* v. *Reid*, supra, 112 Cal.App. 285, 290.) The

gravamen of the tort is ordinarily the unwarranted publication by defendant of intimate details of plaintiff's private life. (See annos. 138 A.L.R. 22; 168 A.L.R. 446.)

In the instant case there is no such unwarranted publication by defendants of intimate details of plaintiffs' private lives. Even if it be assumed that defendants were the legal cause of the publicity concerning the arrest and subsequent prosecution of plaintiffs' son, the conclusion is inescapable that such publicity was not of such nature as to give rise to a cause of action in plaintiffs. The facts concerning the arrest and prosecution of those charged with violation of the law are matters of general public interest. Therefore the publication of details of such official actions cannot, in the absence of defamatory statements, be actionable. (*Metter* v. *Los Angeles Examiner, supra,* 35 Cal.App.2d 304.) The last cited case is peculiarly pertinent to the issue presented herein. In that case, plaintiff's wife had committed suicide in a rather bizarre manner. Defendant newspaper had published an account of the tragedy together with pictures of her and the building from which she had plunged to her death. Plaintiff was mentioned only as her husband and was quoted as to the circumstances surrounding her suicide. It was held that plaintiff had suffered no actionable invasion of his privacy, the court stating: "There are times, however, when one, whether willingly or not, becomes an actor in an occurrence of public or general interest. When this takes place he emerges from his seclusion, and it is not an invasion of his right of privacy to publish his photograph with an account of such occurrence." (35 Cal.App.2d 304, 309.) Further, as pointed out in *Melvin* v. *Reid, supra,* 112 Cal.App. 285, 290, the right of privacy does not exist "in the dissemination of news and news events, nor in the discussion of events of the life of a person in whom the public has a rightful interest. . . ."

So far as the briefs and independent research have revealed, there have been no instances wherein courts have allowed recovery on this theory, where defendant's alleged wrongful act was directed toward a third person, and only as an incident to that act was it claimed that plaintiff's privacy had been invaded. Neither reason nor authority indicates that there should be an extension of liability to cover such a situation. Such a rule would open the courts to persons whose only relation to the asserted wrong is that they are related to the victim of the wrongdoer and were therefore brought

unwillingly into the limelight. Every defamation, false imprisonment, and malicious prosecution would then be an actionable invasion of the privacy of the relatives of the victim.

It is thus apparent, as defendants maintain, that there is no need in this case to depart from the established rule that actions for false arrest and malicious prosecution are personal actions which do not give rise to a cause of action in anyone other than the person directly aggrieved. (34 Am. Jur. § 82, p. 754; 39 Am.Jur. § 75, p. 719; *Rogers* v. *Smith,* 17 Ind. 323, 324 [79 Am.Dec. 483] ; *Sperier* v. *Ott,* 116 La. 1087, 1089 [41 So. 323].)

The judgments are affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., and Traynor, J., concurred.

CARTER, J.—I dissent.

The majority of this court is, apparently, determined that no action for false arrest, false imprisonment or malicious prosecution shall lie against anyone connected with the enforcement of the law (see *White* v. *Towers,* 37 Cal.2d 727 [235 P.2d 209] ). To achieve this result it is, of course, necessary here, as in the White case, to assume certain facts which do not appear of record. In the White case it was necessary for the court to assume that the one making the arrest and filing the charges was a deputy of the Fish and Game Commission. Without this assumption, the defendant there would have had no authority to make or procure an arrest for an alleged violation of the Fish and Game Code. In the instant case, a different assumption is made, but in my opinion, one on which the affirmance of the judgments of nonsuit rests.

The young men in the instant case were arrested and charged with a violation of section 407 of the Penal Code. That section provides that: "Whenever two or more persons assemble together to do an unlawful act, and separate without doing or advancing toward it, or do a lawful act in a violent, boisterous, or tumultuous manner, such assembly is an unlawful assembly." The record shows that a group of students were gathered near the intersection of two streets in Los Angeles. The record is not so clear as the majority would have us believe that "their *purpose* was to view a 'hot-rod' race." These boys were found not guilty by a jury of the misdemeanor with which they were charged pursuant to the above Penal Code section. It appears to me that only two implications

can be drawn from the verdict: That they were not assembled to do an unlawful act or that the lawful act for which they were assembled was not being carried forward in a "violent, boisterous, or tumultuous manner" as provided in the Penal Code. It is undisputed that the boys were present together with a number of other students so that there was an assembly of two or more persons. It is stated in the majority opinion that "Since . . . a peace officer may lawfully made an arrest for a public offense committed or attempted in his presence (Pen. Code, § 836), the critical question presented in this case is whether the acts done in the presence of the arresting officer justified the arrests being made without a warrant.

"It is not disputed that the group was assembled to view a 'hot-rod' race. *Such illegal purpose renders the action of the group knowingly participating* therein an unlawful assembly within the meaning of section 407 of the Penal Code." (Italics added.) But the jury, by its verdict, found no illegal purpose. There is no evidence that these boys participated in the hot-rod race, or that they even knew that there was going to be one at that time and place. In *People* v. *Palmer,* 76 Cal. App.2d 679, 685 [173 P.2d 680], it was said: ". . . it is well settled that the question of whether or not a person who is shown to have been present at the time and place of the commission of a crime has aided and abetted therein is one of fact for the jury to decide from all the circumstances proved." And the jury here returned a verdict of "not guilty." The mere fact that the boys were present when the officers arrived does not constitute the existence of such circumstances as would cause a reasonable person to believe that a crime was being committed in the presence of the officers so as to warrant an arrest without a warrant. Under the holding in this case, an officer could arrest any innocent bystander who unfortunately happened to be passing by the scene of any crime, imprison him, and then say that because he happened to be in the vicinity, there was probable cause to believe him guilty. It is specifically provided (Pen. Code, § 836) that a peace officer may arrest a person, without a warrant "for a public offense committed or attempted in his presence." These boys were standing on the bank by the side of the road when they were arrested. One who is merely a spectator at the scene of a crime, who does not participate therein, nor aid or abet its commission, cannot be held as a party to it. (*People* v. *Woodward,* 45 Cal. 293 [13 Am.Rep. 176].)

It seems that the majority feels that the arrest and imprisonment were lawful because the boys were assembled at that particular spot for an illegal purpose. In so doing, the verdict in the criminal case is, by implication, set aside. For there the verdict showed that there had not been an illegal purpose in the assemblage of the young people.

So far as the imprisonment is concerned, after the boys were arrested without a warrant, the plaintiffs' evidence shows that they were not taken before a magistrate prior to incarcerating them and that there were no orders of commitment, which conduct of the officers was contrary to sections 145 and 849 of the Penal Code. Retention of prisoners for an unnecessary period of time without a magistrate's commitment order, constitutes false imprisonment. (*Gomez* v. *Scanlan*, 155 Cal. 528 [102 P. 12].)

There is also evidence in the record from which it could be found that the complaint was filed by the police officers against these plaintiffs to avoid the possibility of lawsuits for false arrest and imprisonment. Mr. Mock, father of one of the plaintiffs, testified that Captain Cook, one of the defendants here, called him to his office and remarked that a complaint had not been filed against the boys but that unless they (the police) were released from liability they would have to do so to protect themselves. In *Franzen* v. *Shenk*, 192 Cal. 572, 580-583 [221 P. 932], it was said: ". . . if it appears anywhere during the trial . . . that the defendant did not actually believe in the guilt of the person charged with crime, then that fact is an essential element to be considered in the determination of the question of whether or not the defendant had probable cause.

". . . the same evidence which tends to prove malice may also, if it indicates a lack of belief on the part of the defendant in the guilt of the plaintiff, tend to prove want of probable cause. . . . If, on the other hand, in addition to malice, there was a lack of belief by the defendant in the guilt of the plaintiff, there was want of probable cause, despite the existence of facts which would justify the suspicions of a reasonable man in the guilt of the accused." Viewing the evidence in the light most favorable to plaintiffs and disregarding conflicts as this court must do in testing the propriety of nonsuits, it appears to me that there was ample evidence from which the jury could have found that these defendants did not themselves believe that they had either probable cause or reasonable grounds for the

arrest, imprisonment or prosecution of these plaintiffs. No officer should be permitted to bring unwarranted, unfounded charges against any individual for the purpose of rendering himself immune from liability.

I am of the opinion now, as I was when I wrote my dissent in *White* v. *Towers, supra,* that the protection of individual rights should be zealously guarded from unwarranted police action and that the privilege of police immunity should not be so extended that it protects any law enforcement officer who chooses to make an arrest on mere suspicion or conjecture.

The majority decision in this case is another step in support of the police state philosophy which the majority of this court has approved and sanctioned in several recent decisions (see *People* v. *Rochin,* 101 Cal.App.2d 140 [225 P.2d 1], reversed by U. S. Supreme Court, January 2, 1952, see *Rochin* v. *California,* 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. ——]; *White* v. *Towers,* 37 Cal.2d 727 [235 P.2d 209]; *People* v. *Gonzales,* 20 Cal.2d 165 [124 P.2d 44]), and demonstrates the absurdity of the argument that a person whose rights have been violated by a peace officer may obtain redress against the offending officer. (*People* v. *Gonzales,* 20 Cal.2d 165, 169 [124 P.2d 44].)

I would reverse the judgment as to all defendants.

SCHAUER, J.—I concur generally in the view of the law, and in the conclusion stated by Justice Carter.

Appellants' petition for a rehearing was denied February 21, 1952. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.