STATE OF WEST VIRGINIA *v.* ELBERT ALLEN RIGSBY

(No. 9304)

Submitted April 21, 1942. Decided May 12, 1942.

Kenna and Riley, Judges, dissenting.

*Salisbury, Hackney & Lopinsky* and *Samuel D. Lopinsky*, for plaintiff in error.

*Clarence W. Meadows, Attorney General,* and *Kenneth E. Hines, Assistant Attorney General,* for defendant in error.

Rose, Judge:

Elbert Allen Rigsby prosecutes this writ of error to the action of the Circuit Court of Cabell County in affirming the judgment of the Court of Common Pleas of that County, by which he was sentenced to the penitentiary for a term of from one to three years upon a second conviction for unlawful transportation of alcoholic liquors in violation of Code, 60-6-12. The errors assigned are: (1) That the demurrer to the indictment was improperly overruled; and (2) that the admission of certain evidence on behalf of the state was improper by reason of its having been procured under a search warrant claimed to be illegal. On the trial, the plaintiff in error undertook to defend by proving an alibi, but the jury's finding against him on that issue is not complained of here.

The indictment consists of four paragraphs. The first two charge adequately the violation of Code, 60-6-12, by the unlawful transportation of alcoholic liquor in Cabell County, but alleged that the act was done "unlawfully and feloniously." The third and fourth paragraphs are set apart under the heading "second count". They charge clearly that the defendant has been before convicted and sentenced in the State of West Virginia for a like offense.

The demurrer was based upon the theory that the first two paragraphs must stand alone and that they charge a misdemeanor only, not a felony; and that the last two paragraphs must be treated as a separate and distinct count, which do not allege any punishable crime.

The third and four paragraphs are not a "count" in

any proper sense of the word, notwithstanding they are so called in the indictment. Their character is not determined by what they are called, but by their actual substance. This so-called "second count" does not in any sense make a charge upon which the defendant can be made to stand trial. It does not pretend so to do. It does not allege that he, in fact, did the act described therein, but only that he was "convicted and sentenced" therefor. These paragraphs further show on their face complete facts which constitute a perfect defense on the grounds of former jeopardy and of *autrefois convict.* If the indictment contained these paragraphs alone, it would be simply a nullity. But they do serve to show the character of the defendant with whom we are dealing; they place him in a class as to whom the offense charged in the first two paragraphs is a felony. *State* v. *Mullenax,* 124 W. Va. 243, 20 S. E. 2d 901, decided April 7, 1942; *State* v. *Graham,* 68 W. Va. 248, 69 S. E. 1010, 40 L. R. A. (N. S.) 924. The statute provides that one who has been convicted as charged in the third and fourth paragraphs and subsequently does what is charged against him in the first two paragraphs shall be guilty of a felony. Code, 60-6-12. We, therefore, consider the indictment good.

The search warrant was issued upon complaint, duly verified, of O. R. Ruth, an enforcement officer of the West Virginia Liquor Control Commission. It authorized the search of "that particular 1940 Model Ford V-8 Coupe, Painted Black, bearing Kentucky License 68-456." The complaint alleged that the affiant "has cause to believe" and "does believe that alcoholic liquors, as defined by the West Virginia Liquor Control Act, are being transported, sold, kept, stored, held, used and concealed in the county aforesaid" in the automobile above described, and "that the facts for such belief are that the affiant knowing the said Elbert Rigsby to be a bootlegger and having received information that the said Elbert Rigsby would deliver whisky to 840½ 4th Avenue in the above said automobile." The only criticism of this affidavit is that it does not set up sufficient "facts" to justify the

belief pretended by the officer. Code, 60-6-18, provides that "If there be complaint on oath or affirmation supported by affidavit or affidavits setting forth the facts for such belief that alcoholic liquors are being manufactured, sold, kept, stored or in any manner held, used or concealed in a particular house or other place in violation of law, the justice of the peace, * * * to whom such complaint is made, if satisfied that there is a probable cause for such belief, shall issue a warrant to search such house or other place for alcoholic liquors." What "facts" shall be considered as sufficient to satisfy the issuing magistrate that the complaining person had probable cause for his belief that the law is being violated as stated, is sometimes a difficult question. In *State* v. *Lacy*, 118 W. Va. 343, 190 S. E. 344, 346, we held that an affidavit or complaint setting forth "sale" and "possession and sale" as the only facts in support of the affiant's belief was insufficient; but, in the opinion by Judge Riley, it was also said: "Under no condition, do we wish to be understood that the new statute requires the affidavits to contain a statement of the evidence, nor do we think that any detailed statement is required of the affiant in such an affidavit." Somewhere between no facts, and the superfluous details which may be properly designated as evidence, a reasonably broad latitude must exist within which an affidavit will suffice. The words in the complaint, "knowing the said Elbert Rigsby to be a bootlegger", do not state a conclusion of law as suggested by plaintiff in error. They are a statement of fact as completely as if it had been said that he was a farmer, a doctor or a carpenter. The allegation that the officer had received information that the defendant would deliver whiskey at a certain place in a certain automobile is likewise an allegation of fact, namely, that he had actually received such information. It is common knowledge that prosecuting officers are compelled to, and do in a great number of cases, make out their complaints largely, if not wholly, upon information. Actually, the only excuse for seeking a search warrant is usually that

the officer "believes" an offense is being committed, and is searching for "facts" by which to prove it. If he knew the "facts" of the crime, no search warrant would be necessary. The sufficiency of the "facts" alleged in such an affidavit to justify the complaining officer's belief are directed to the sound discretion of the magistrate from whom the warrant is sought. Those in the complaint here involved are much more complete than those which we held insufficient in *State* v. *Lacy, supra.* This complaint should preferably have been worded as a direct statement, and a fuller showing as to time, place and source of the information relied upon would have been desirable, but a majority of the Court are unwilling to hold that it contains no facts from which the justice could be legally satisfied that the complaining officer had sufficient basis of fact for his belief that an offense against the law was being committed as in the complaint set out.

The state further insists that the search of the car in question was lawfully made after the arrest of the defendant's companion, Cassel, as for an offense committed in the presence of the arresting officers. Ruth and Folio were agents of the Liquor Control Commission. Their power to arrest without warrant is created by section 24, article 3, chapter 40 of the Acts of 1939, in the following words:

> "Members of the commission are hereby vested, and such officers, agents and employees of the commission as shall be designated by the commission shall, upon being so designated, be vested, with like power and authority to enforce the provisions of this chapter and the criminal laws of the state relating thereto as are vested in sheriffs of counties and members of the department of public safety."

Members of the department of public safety are authorized "To make arrests anywhere within the confines of the State of any and all persons charged with the violation of any law of this State, or of the United States, and when a witness to the perpetration of any offense or

crime, or to the violation of any law of this State, or of the United States, may arrest without warrant; * * *." Code, 15-2-11 (a) ; see also, *State* v. *Brown,* 101 W. Va. 160, 132 S. E. 366; *State* v. *Wills,* 91 W. Va. 659, 114 S. E. 261; *State* v. *Olivetti,* 107 W. Va. 357, 148 S. E. 205; *State* v. *Tatar,* 108 W. Va. 709, 152 S. E. 748.

These two officers testified that after obtaining the search warrant at one o'clock at night, they placed themselves, about three o'clock, in concealment near the house where the liquor was expected to be delivered; that near seven o'clock in the morning, as day was breaking, the defendant, Rigsby, arrived in the alley near the house in question, driving the car mentioned in the search warrant; that a man named Cassel, who was in the car with Rigsby, alighted therefrom and was in the act of "unloading whiskey" or "getting ready to get a package of this whiskey" from the car when the officer Ruth disclosed himself; that the defendant instantly attempted to back the car out of the alley, but was "hemmed in" by the car of the officers, driven by Folio; that the car driven by the defendant knocked down Cassel, who was rendered partially unconscious, and crashed against the wall of a building; that the defendant fled, making good his escape, and Cassel was immediately arrested, the car searched and 90 pints of whiskey found therein, on the ledge on top of the back of the seat.

We are of opinion that what these officers saw and what they otherwise knew was sufficient to justify the arrest of Cassel. "An offense can be said to be committed in the presence of an officer only when he sees it with his own eyes, or sees one or more of a series of acts constituting the offense, and is aided by his other senses or by information as to the others, when it may be said the offense was committed in his presence." *State* v. *Lutz,* 85 W. Va. 330, 101 S. E. 434. "A crime is committed in the presence of an officer when the facts and circumstances occurring within his observation, in connection with what, under the circumstances, may be considered as common knowledge, give him probable cause to be-

lieve or reasonable grounds to suspect that such is the case." *State* v. *Koil,* 103 W. Va. 19, 136 S. E. 510, 511.

Cassel, therefore, must be considered to have been legally arrested, even if it were held that the officers did not possess a legal search warrant. And his arrest authorized the seizure of the whiskey in the car in which he had just arrived and from which he was attempting to take the liquor. "The instruments, devices and materials used in the commission of a crime are competent and legitimate evidence on the trial of the accused, and the taking of them from the premises of the accused where he is arrested by an officer making the arrest on a lawful warrant, is not illegal search and seizure." *State* v. *Rudy,* 98 W. Va. 444, 127 S. E. 190. "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted." *Agnello* v. *United States,* 269 U. S. 20, 46 S. Ct. Rep. 4, 70 L. Ed. 145. See also, *State* v. *Brown,* 101 W. Va. 160, 132 S. E. 366; *King* v. *United States,* 1 F. 2d 931; *Thomas* v. *State,* 196 Ind. 234, 146 N. E. 850; *Pickett* v. *Marcucci's Liquors, etc.,* 112 Conn. 169, 151 A. 526; 56 C. J. p. 1202.

It follows that the judgment complained of will be affirmed.

*Affirmed.*

KENNA, JUDGE, dissenting:

I disagree with the reasoning of the majority opinion concerning the sufficiency of the affidavit supporting the search warrant, and also in its conclusion that a conviction based upon the indictment under which the accused stands charged will sustain the sentence for a felony under our habitual criminal act.

The Prohibition Act of 1913 (Acts 1913, ch. 13, sec. 9) provided, in substance, that a search warrant based upon

a suspected violation of that act would issue upon the filing of an affidavit made upon information and belief, requiring no statement of fact. This rather loose requirement was in keeping with the general rule governing searches and seizures under Code, 62-1-18.

It was later found, however, that in the enforcement of the prohibition law to base the issuance of a search warrant upon an affidavit in the making of which the complainant was required to accept no responsibility whatsoever resulted in many brutal abuses of power by the law enforcement agencies.

In order to deal with the situation that had arisen and to protect the people of West Virginia, including the law-abiding, from the outrageous practices perpetrated under the guise of the police power, the 1935 Legislature in repealing Prohibition and enacting the Alcohol Control Act altered the section relating to search warrants authorized when the violation of that act was in question, by inserting a provision requiring the complaint under oath upon which the issuance of the search warrant rested, to set forth facts giving rise to the belief that the provisions of the act were being violated, not required in the act of 1913.

I am of the opinion that the change in the provisions of the act governing the use of search warrants applicable to the unlawful handling of alcoholic liquor shows clearly the legislative purpose to limit that use more than it had been limited under the then existing statute, even to the extent of requiring the disclosure of possibly material facts to the person whose property was to be searched. I think this view of the matter is emphasized by the fact that the Legislature left the statute governing the use of search warrants in general involving other violations of the law and not requiring a statement of fact in the supporting affidavit, unchanged.

Code, 60-6-18, requires that before a search warrant shall be issued based upon the violation of our liquor law, an affidavit be filed to the effect that the affiant believes the law is being violated and "setting forth the

facts for such belief". Here the affidavit states "that the facts for said belief are that the affiant knowing the said Elbert Rigsby to be a bootlegger and having received information that the said Elbert Rigsby would deliver whiskey to 840½ Fourth Avenue, in the above said automobile." Affiant's knowledge that the accused was a "bootlegger", I do not believe can be regarded as the statement of more than an opinion, and certainly any information that the officer had received concerning Rigsby's future conduct, whether to deliver whiskey or what-not, cannot be regarded as a statement of fact. To reason that the statement in the affidavit that the affiant has received information is a statement of fact justifying the issuance of the warrant, plainly defeats the purpose of the statute. It is actualities, not reports that may have passed through a dozen mouths, that the statute requires to be the foundation of a lawful search of a person's home. Of course, I agree that the affiant should not be required to make a full disclosure of the case against the accused in order to procure a search warrant, but certainly the statute in requiring a statement of fact does not mean opinion and prophecy. There is a galaxy of cases dealing with time-honored maxims that could be cited relating to search and seizure, but their volume is such that their citation would be an impediment instead of a help.

Each count in an indictment must plainly charge all of the essential elements which constitute the offense which the state will seek to prove at the trial. Certain allegations of one count by express reference may be included in those of another. We are not concerned with that rule here, save to say that the majority opinion destroys its necessity.

I do not believe that in criminal pleading form can be disregarded to the extent of utterly ignoring a pleader's stated purpose in labeling certain parts of the indictment "second count". If the "substance" may be looked to, and structure accordingly altered, to the extent of consolidating without reference material allegations con-

tained in a first count with those contained in what is labeled "second count", so that the combination will comprise a felony accusation, I do not see why the same process cannot be applied to what might be labeled third count, fourth count, fifth count, and so on. There are certain rigid standards applicable to pleadings in criminal cases that are absolutely essential, and I fear that the majority opinion may establish a rule which, when put into operation, will lead to much loose pleading, and to the abandonment of the generally recognized standard. In order for the accused to be fully informed concerning the charge that he is confronted with, each count in an indictment must contain an allegation of every integral part of the offense. It cannot be left to the defendant in a criminal prosecution to seek "substance" in two or more counts of an indictment.

I believe the following citations will be found to sustain the principle that as to the sufficiency of their averments, the counts of an indictment stand alone. *State* v. *Vaughan*, 93 W. Va. 419, 117 S. E. 127; Beale's Criminal Pleading & Practice, section 205, page 231; 27 Am. Jur., Indictments and Information, section 219, page 687.

Judge Riley concurs in this opinion.