THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
PABLO SOTO RIVERA, Defendant and Appellant.

No. 15382.   Argued June 2, 1953.—Decided November 4, 1954.

194

*César Andréu Ribas* for appellant.   *J. B. Fernández Badillo, Acting Attorney General,* and *Jaime García Blanco, Assistant Fiscal for the Supreme Court,* for appellee.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The Prosecuting Attorney of the District Court of Puerto Rico, Bayamón Section, filed an information for a violation of §§ 6 and 15 of Act No. 17 of January 19, 1951 (Spec. Sess. Laws, p. 426), against Pablo Soto Rivera, because: "on August 18, 1951, in the Ward Guaraguao of Bayamón, Puerto Rico, Bayamón Section, Puerto Rico, then and there, said defendant Pablo Soto Rivera, unlawfully, wilfully, maliciously, and with criminal intent had and possessed upon his person a Star pistol, 7.05 caliber, nickel plated, brown wooden trimmed, with magazine, serial No. 554, without having requested and obtained from the Chief of the Insular Police

of Puerto Rico, a license to have and to possess a firearm."

Defendant pleaded not guilty, and the trial was set for March 6, 1952; after evidence for the prosecution and for the defense was heard, the Court found defendant guilty of a violation of §§ 6 and 15 of Act No. 17 of January 19, 1951, known as the Weapons Act of Puerto Rico, and on March 17, 1952, defendant was sentenced to six months' imprisonment in jail. He has appealed from that judgment and assigns the following errors:

1. The lower court erred in overruling a "Motion requesting the suppression of Evidence" filed by the defendant.

2. The lower court erred in finding defendant guilty and basing its judgment on evidence obtained by means of a wrongful search made of defendant and his automobile.

On the day of the occurrence, defendant went for a ride to Bayamón together with a friend and two ladies. Upon reaching barrio Guaraguao, the automobile ceased to function and had to be parked on the edge of the highway, without lights. Defendant tried to repair the electric defect, but when he realized that it was a serious damage, he and his companions went to sleep until morning. When the police patrol passed by said place, and saw a car without lights parked at the edge of the highway, it proceeded to arrest the defendant. Upon arresting him, the policemen seized defendant's pistol. Based on the possession of this pistol about his person, he was charged with a violation of §§ 6 and 15 of the Weapons Act of Puerto Rico. There is no doubt that when the defendant was arrested, the policemen proceeded to search the person of defendant as well as his automobile.

The position which appellant takes in his argument of the case before this Court is that the search of his person is unlawful, in accordance with our legislation in force as modified by § 10 of Article II of the Constitution of the Commonwealth of Puerto Rico.

Title V of the Code of Criminal Procedure of Puerto Rico defines what constitutes an arrest, who can make it and how it should be made. For present purposes it is enough if we examine § 115 which provides: "An arrest is made by an actual restraint of the person of the defendant or by his submission to the custody of an officer...", that part of § 116 which provides: "A peace officer may make an arrest in obedience to a warrant delivered to him, *or may*, *without a warrant*, arrest a person: 1—for a public offense committed or attempted in his presence..."; and § 126 which provides: "Any person making an arrest may take from the person arrested all dangerous weapons which he may have about his person, and must deliver them to the justice of the peace before whom he is taken."

The power of a policeman to arrest a person who has committed a public offense in his presence, has been recognized by this Court since 1912, upon deciding the case of *The People* v. *Ramos*, 18 P.R.R. 954, 955 (MacLeary) (1912), whose doctrinal context may be summarized in the same language used in the headnote, as follows: "Paragraph 1 of section 116 of the Code of Criminal Procedure empowers a policeman to arrest a person who has committed a public crime in his presence, whether it be a felony or a misdemeanor, at any hour of the day or night, without a warrant of arrest...." The power of a peace officer making an arrest to take from the person arrested any dangerous weapon which he may have about his person, is sanctioned, as we have seen, in § 126 of the Code of Criminal Procedure of Puerto Rico.

Are these provisions in conflict with § 10 of Article II of the Constitution of the Commonwealth of Puerto Rico which provides: "The right of the people to be secure in their persons, houses, papers and effects against *unreasonable searches* and *seizures* shall not be violated. Wire-tapping is prohibited. No warrant for *arrest* or search and seizure

shall issue except by judicial authority and only upon *probable cause* supported by oath or affirmation, and particularly describing the place to be searched and the person to be arrested or the things to be seized"?

In the report rendered by the Committee of the Bill of Rights to the Constitutional Convention of Puerto Rico, in relation to § 10 of Article II of the Constitution of Puerto Rico, it was said:

"The right of the people to be secure is extended to everything that is necessary for the development and expression of the person himself. The home, the furniture and the implements, the books and the papers possessed by a citizen are like a prolongation of his person, since they constitute the ambit in which he has developed and actually lives. Any intromission without his permission into that private circle is equivalent, to any man, to a violation of his personality. The same holds true as to the medium of expression of his intimacy and which he reserves for only a few: his correspondence, and his spontaneous manifestations through the modern mechanical means of communication. To violate this intimacy is the most shameful attack against the fundamental rights of the person.

"However, the same means and possessions which serve for the development and the support of the individual can be used as an instrumentality of crime or the consequence of its commission. In such cases to hesitate before these barriers of personality would be tantamount to unduly sheltering crime and the offender. Whenever a conflict arises between the private and the public, the solution is handed over, with all its guarantees, to the judicial authority in charge of prosecuting and penalizing the transgressions against the law. The personal guarantees against arrest, search and seizure, have their limit in criminal conduct. Only in cases of *established suspicion* (these two words were removed in the debates of the Convention, see page 600 of

the Journal of the Proceedings), that is, when there is probable cause—except in cases of offenses *in flagrante delicto* determined by the criminal law—may the judicial authority exercise the power to issue warrants of arrest and search."

We believe that in the phrase "only in cases...when there is probable cause—*except in cases of offenses in flagrante delicto determined by the criminal law*—may the judicial authority exercise the power to issue warrants of arrest and search," the words: "except in cases of *offenses in flagrante delicto* determined by the criminal law" undoubtedly refers to public offenses committed in the presence of a peace officer, that is, to those cases where the peace officer surprises the offender or the violator in the very act of committing the offense.

In the debates before the Constitutional Convention of Puerto Rico—see Journal of Proceedings of the Constitutional Convention of Puerto Rico, pp. 593–601—, it may be clearly noted that the language of § 10 was patterned on the Federal Constitution—the end of the first column and the beginning of the second column at page 594—and a constitutional policy of extreme importance is announced: that it is not the intention of the Constitutional Convention to limit the political power of the Legislative Assembly of Puerto Rico in everything that refers to the prosecution of crime and to the protection of the citizens—end of the third column p. 596.

Although not dealing directly with the question of the arrest, it clearly transpires from the debate that took place on the seizure of prohibited things what the true position of the Constitutional Convention was with respect to the desirability of leaving the Legislature of Puerto Rico free to approve those rules which are required at a particular moment for the prosecution of crime as well as the protection of the citizen:

"González Blanes: Miss Chairman and fellow-delegates:

The amendment which I am about to propose is an insertion, that is, after the phrase, § 10, in line 16 the paragraph should read: 'No property shall be confiscated without previously filing an information and the obtention of a judgment of conviction.'

"Miss Chairman: The secretary is going to read the amendment, so it can be clearly understood.

"Secretary: In line 16, the paragraph starts as follows: 'No property shall be confiscated without previously filing an information and the obtention of a judgment of conviction.'

"Parkhurst: I second the motion.

"González Blanes: Miss Chairman: This is a provision which does not exist in the Organic Act, but it does exist in different Constitutions. In my opinion, it cures an evil which we presently suffer in Puerto Rico. For example, we have the Beverages Act, the Weapons Act and other Acts, which provide for the confiscation of property, even when there is no complaint or judgment of conviction. To make myself clearer, according to the present Weapons Act, for example, a knife, a revolver or a machete may be seized from a person's automobile. Said automobile is immediately confiscated at the moment of the arrest. Actually it is not a piece of evidence, because pieces of evidence are not confiscated. They are used as objects of proof during the trial. Thus, for example, when a diamond is stolen from a person, the prosecuting attorney keeps the diamond in order to present it in evidence when the time for the trial comes. This is not so in this case. Here, pursuant to the Weapons Act, as well as the Beverages Act, there is a confiscation of property. It often happens, unfairly, that the property is confiscated because an object, or liquor or a weapon is found therein, and a judgment of acquittal is subsequently rendered. Meanwhile, that vehicle, for example, in the case of an automobile, is kept by the authorities subject to depreciation, and consequently there has been an unreasonable punishment. In many places this confiscation of property is not allowed until there is a complaint and a judgment of conviction. The object of my amendment is to correct this evil which exists by virtue of certain provisions or of certain Acts which prevail in Puerto Rico.

"Alvarado: Miss Chairman.

"Miss Chairman: The delegate Alvarado has the floor.

"Alvarado: Miss Chairman. If we should approve this amendment then the result would be as follows: the State is prosecuting, let us say, the violations of the Bolita Act or the violation of the Beverages Act or Narcotics Act or Weapons Act, but cannot seize the evidence which it is going to present at the trial, until the trial has been held, and until the judgment has been rendered. This, of course, would hinder the introduction of evidence in court in order to prove the offense. Now, if the colleague says that this is limited to confiscations and that it does not refer to the seizure of evidence, I find that the difference is too subtle to be valid in practice. And I do not see how a printing office for a example, could be confiscated because it is exclusively devoted to bolipool sheets, *bolita,* or pornographic material, for there is no other way of effectually stopping the commission of that offense or of enforcing the penalty at the proper time than the immediate confiscation, leaving the citizen free to appear before the judge to claim his property, as it is now established by the laws, alleging the legality of its possession. This procedure which actually prevails does not tie the hands of the State, yet it assures the community that in this kind of offenses where confiscation is necessary, the penal system is going to work without those great hardships which would render impossible the adequate application of the penal law. In such matters, it does not seem proper, Miss Chairman...

"González Blanes: Is that a question?

"Miss Chairman: It is his turn.

"González Blanes: Ah, I thought it was a question.

"Alvarado: No, I am arguing.

"Miss Chairman: Turn, turn.

"Alvarado: Matters like this should not remain subject to the perpetual and immutable prohibition of a Constitution. They are proper matters to be handled legislatively and the Legislative Assembly may establish those restrictions and those means of fulfillment most conducive to better justice, but to establish the constitutional prohibition is undoubtedly to hinder the efficient and adequate administration of criminal justice in cases which involve this kind of unlawful property."

We likewise note that § 10 establishes the right of the people against *unreasonable* searches, and seizures and not

against searches and seizures *which might be reasonable* within the circumstances of each case, following the United States constitutional theory.

Our inevitable conclusion is that there is no constitutional conflict between §§ 116, paragraph 1 and 126 of the Code of Criminal Procedure of Puerto Rico and § 10 of Article II of the Constitution of the Commonwealth of Puerto Rico, and therefore, when a public offense is involved and it is committed in the presence of a peace officer, the latter may arrest the offender and search him and seize from him whatever property is forbidden by the law and which is found upon his person or inside his automobile, as long as the rules established by the United States constitutional jurisprudence are observed.

The first rule is that the arrest must be lawfully executed, that is, that the arrest be authorized by the state statute, and incidental to a public offense which is clearly defined by the law. We have seen that paragraph 1 of § 116 of the Code of Criminal Procedure empowers a peace officer to arrest a person without a warrant, where said person commits or attempts to commit a public offense in the officer's presence, whether it be a *felony* or a *misdemeanor*, at any hour of the day or night: *The People* v. *Ramos, supra.* Section 12 (*g*) of Act No. 279 of April 5, 1946 (Sess. Laws, p. 598) known as "The Automobile and Traffic Act," provides that: "No motor vehicle shall be left after sunset on any public road unless it is provided with sufficient lights, visible from all directions, in order to avoid danger to persons using said road; ..." and § 21 of the same Act provides that: "Such violations of the provisions of this Act for which no specific penal sanction has been established, as well as violations of the rules promulgated by the Commissioner, shall be deemed as misdemeanor." Therefore, to leave a motor vehicle on a public road during the night without providing it with sufficient lights, visible from all direc-

tions, is a misdemeanor, for which the driver can be arrested. For such arrest the peace officer does not need any warrant, for since the commission of the offense is evident from the simple observation of the parked vehicle, it is considered as a public offense committed in the presence of said peace officer: *State* v. *Deitz*, 239 P. 386, 387 (Main), (1925); *State* v. *Olsen*, 263 P. 2d 824, 826 (Weaver), (1953) (this is about an arrest for violation of traffic laws, committed in the presence of a peace officer where a pistol is seized from defendant inside an automobile); *Rucker* v. *State*, 77 N.E. 2d 355, 356 (Young) (1948); *Bass et al.* v. *State*, 35 A. 2d 155, 160 (Melvin) (1943); *People* v. *Barg*, 51 N. E. 2d 168, 171 (Wilson) (1943); *State* v. *Rigsby*, 20 S. E. 2d 906, 909 (Rose) (1942); *Johnson* v. *Commonwealth*, 41 S.W. 2d 913, 914 (Hobson) (1931), (arrest made for not having proper lights, search of an automobile and seizure of a pistol).

The second rule is that both the search of the person and of the property under his immediate control at the moment of the arrest, in this case an automobile, and the corresponding seizure of the instrumentalities of the crime or the things prohibited by law, must be incidental to the lawful arrest: 32 A.L.R. 680; 51 A.L.R. 424; 74 A.L.R. 1387; 82 A.L.R. 782. That the search and seizure be incidental to the arrest means that the primary object of the peace officer upon approaching the person and the property under his immediate control, is the arrest and not the search or the seizure. The lawful arrest should precede the search and seizure, or it should be contemporaneous with said search and seizure, as a natural incident of a lawful arrest, and no warrant of arrest, search, or seizure is needed in this case. A warrant of arrest signed by a competent authority is needed when the purpose of the peace officer upon approaching the person and the property under his control, is to search said person in order to seize any article which

is unlawful for him to have upon his person, or that might be found under the immediate control of the offender.

The true conflict in the jurisprudence does not lie in the search of the person, which is incidental to a lawful arrest, when the offense is committed in the presence of a peace officer, nor in the search of the property under his immediate control and which is in plain sight of the peace officer. The true conflict lies in the search of the premises or business outside the area where the arrest is executed: *Marron* v. *United States*, 275 U. S. 192, 198, 199, 72 L. Ed. 231, 238 (Buttler) (1927) ; *Carroll* v. *United States*, 267 U. S. 132, 69 L. Ed. 543, 553 (Taft) (1925) ; *Harris* v. *United States*. 331 U. S. 145, 150, 151, 91 L. Ed. 145, 91 L. Ed. 1399, 1405, (Vinson) (1947) ; *Trupiano* v. *United States*, 334 U. S. 699, 704, 92 L. Ed. 1663, 1668 (Murphy) (1948) ; *United States* v. *Rabinowitz*, 339 U. S. 56, 60, 94 L. Ed. 657 (Minton) (1950). A careful study of all these cases shows that there has never been any doubts as to the right of a peace officer to arrest a person who has committed an offense in his presence, and as an incident to this arrest, to search him and to seize anything which might be used to prove the offense for which he is arrested, or to seize any deadly weapon or thing prohibited by law which he is carrying on his person or which is found under his immediate control and in plain sight of the peace officer. The controversy between the *Trupiano* case and the *Rabinowitz* case which expressly overrules the *Trupiano* case, hinges upon the search of the place of business of the person arrested, when there is no search warrant. See p. 671, 94 L. Ed. the annotation following the *Rabinowitz* case about the "Legality of searching premises without a search warrant as incident to valid arrest."

As to the search of automobiles it has been held, ever since the case of *Carroll* v. *United States, supra,* pp. 153, 154 U. S., 551 L. Ed. and based on the theory that the constitutional prohibition referred to unreasonable searches and

not to searches which are reasonable under the circumstances of each case, that automatic searches after a lawful arrest of ships, motor boats, automobiles, etc., were reasonable, because the mobility of such vehicles did not permit, as in the case of buildings, the securing of a warrant in advance. As to the search of automobiles by means of a warrant of arrest, see *The People* v. *Ríos*, 71 P.R.R. 908, 911 *et seq.* (Snyder) (1950).

The jurisprudence has definitively explained that when a lawful arrest is made, any deadly weapon or anything which is prohibited by law which is found either upon the person or in the property within the immediate control of the person arrested, may be subject to seizure by the peace officer: *Harris* v. *United States, supra*, p. 331 U. S. 151; 91 L. Ed. 1406, and such deadly weapons or unlawful things may be used to charge the person arrested with an offense other than the one for which the arrest was made: *Harris* v. *United States, supra*, p. 154 U. S., 1407 L. Ed.; *State* v. *Olsen, supra*: *Shelton* v. *United States*, 50 F. 2d 405, 407 (Evans) (1931); *State* v. *Proud*, 262 P. 2d 1016, 1019 (Thomas) (1953); *Wilson* v. *Commonwealth*, 258 S. W. 2d 497, 499; (Stewart) (1953); *United States* v. *Heitner*, 149 F. 2d 105, 106 (L. Hand) (1945); *State* v. *Superior Court*, 188 P. 2d 125, 129 (Robinson) (1948); *Rucker* v. *State*, 77 N. E. 2d 355, 356 (Young) (1948); *State* v. *Rigsby*, 20 S. E. 2d 906, 909, 910 (Rose) (1942); *Bass* v. *State*, 35 A 2d 155, 159, 160 (Melvin) (1943). Seizure of a deadly weapon or unlawful things during an arrest for a different offense does not become illegal because of the subsequent acquittal of the accused on the charge for which he was arrested: *Shelton* v. *United States*, 50 F.2d 405, 407, (Evans) (1931).

The judgment appealed from will be affirmed.

Mr. Justice Negrón Fernández and Mr. Justice Sifre dissented.