EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PABLO SOTO RIVERA, acusado y apelante.

Número 15382.

*Sometido:* 2 de junio de 1953.   *Resuelto:* 4 de noviembre de 1954.

*César Andréu Ribas*, abogado del apelante; *Hon. Secretario de Justicia Interino Juan B. Fernández Badillo* y *Jaime García Blanco, Fiscal Especial, Tribunal Supremo*, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El señor Fiscal del Tribunal de Distrito de Puerto Rico, Sección de Bayamón, presentó una acusación por infracción de los arts. 6 y 15 de la Ley núm. 17 de 19 de enero de 1951 (Leyes de 1950–51, pág. 427), contra don Pablo Soto Rivera, porque, "el día 18 de agosto de 1951, en el Barrio Guaraguao de Bayamón, Puerto Rico, Sección de Bayamón, Puerto Rico, allí y entonces, el referido acusado Pablo Soto Rivera, ilegal, voluntaria, maliciosa y criminalmente tenía y poseía sobre su persona una pistola marca Star, calibre 7.05, niquelada, cachas de madera color *brown*, serie 554, con peine, sin haber solicitado y obtenido una licencia para tener y poseer arma de fuego del Jefe de la Policía Insular de Puerto Rico."

Después de la correspondiente alegación de inocencia, el caso se vió el día 6 de marzo de 1952; vista la prueba de la acusación y la prueba de la defensa, el tribunal declaró culpable al acusado de una infracción de los arts. 6 y 15 de la Ley núm. 17 de 19 de enero de 1951 conocida como la Ley de Armas de Puerto Rico, y el 17 de marzo de 1952 lo condenó a seis meses de cárcel. El acusado ha apelado ante nos de dicha sentencia, señalando los siguientes errores:

1. Erró el tribunal inferior al declarar sin lugar una "Moción solicitando supresión de Evidencia" presentada por el acusado.

2. Erró el tribunal al declarar culpable al acusado tomando en consideración para su fallo evidencia ilegalmente obtenida mediante el registro del acusado y su automóvil."

El día en que suceden estos hechos, salió el acusado, en compañía de un amigo suyo y dos damas, a dar un paseo por Bayamón. Al llegar al barrio Guaraguao, el automóvil dejó de funcionar y tuvo que ser estacionado a la orilla de la carretera, sin luces. El acusado trató de arreglar el desperfecto eléctrico, pero viendo que se trataba de una avería mayor, tanto él como sus acompañantes, se durmieron en espera del nuevo día. Al pasar la ronda policíaca por dicho sitio, viendo un carro estacionado a la orilla de la carretera, sin luces, procedió a arrestar al acusado. Al arrestarlo, le ocupó la referida pistola, y es por la posesión sobre su persona de la referida pistola, que se le formula la acusación por infracción a los arts. 6 y 15 de la Ley de Armas de Puerto Rico. No hay duda que al arrestar al acusado, los agentes del orden público procedieron al registro, tanto de la persona como del automóvil del acusado.

La posición que adopta el apelante en la exposición de su caso ante este Tribunal es que el registro de la persona del acusado resulta ilegal, de acuerdo con nuestra legislación vigente, según la misma ha sido modificada por la Sección 10 del Artículo I de la Constitución del Estado Libre Asociado de Puerto Rico.

El título V del Código de Enjuiciamiento Criminal de Puerto Rico, establece lo que constituye un arresto, quién podrá hacerlo y cómo se llevará a cabo. Para el presente estudio basta con que examinemos el art. 115 que dispone: "se hace el arresto por medio de la restricción efectiva de la libertad de la persona del acusado, o por estar sometido dicho acusado a la custodia de un oficial"; aquella parte del art. 116 que dispone: "un oficial de orden público puede hacer un arresto en cumplimiento de una orden que le haya sido entregada con tal fin, *o puede, sin una orden de arresto*, detener a una persona: 1—por un delito público cometido o que se ha intentado cometer en su presencia" . . . .; el art. 126 que dispone: "cualquiera persona que haga un arresto puede quitar al individuo arrestado todas las armas peligrosas que

lleve encima y deberá entregarlas al Juez de Paz ante quien el arrestado sea conducido."

La facultad de un policía para arrestar a una persona que ha cometido un delito público en su presencia, fué reconocida por este Tribunal desde el 1912, cuando se resolvió el caso de *El Pueblo* v: *Ramos*, 18 D.P.R. 993, (*MacLeary*), (1912), cita precisa a la pág. 998, cuyo contenido doctrinal podría sintentizarse con el mismo lenguaje usado en el sílabo, de la siguiente manera: "el artículo 116, párrafo 1 del Gódigo de Enjuiciamiento Criminal, da facultades a un policía para arrestar a cualquiera hora del día o de la noche a una persona que ha cometido un delito público en su presencia, ya sea *felony* o *misdemeanor*, sin necesidad de un mandamiento de arresto." La facultad de un policía que haga un arresto de despojar al arrestado de cualesquier armas peligrosas que lleve encima, está consagrada según hemos visto, por el art. 126 del Código de Enjuiciamiento Criminal de Puerto Rico.

¿Están en conflicto dichas disposiciones con la Sección 10 del Artículo I de la Constitución del Estado Libre Asociado de Puerto Rico, que dispone: "No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra *registros, incautaciones* y *allanamientos irrazonables;* no se interceptará la comunicación telefónica; sólo se expedirán mandamientos autorizando registros, allanamientos o *arrestos* por autoridad judicial, y ello únicamente cuando exista *causa probable* apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse y las personas a detenerse o las cosas a ocuparse"?

En el informe rendido por la Comisión de la Carta de Derechos a la Convención Constituyente de Puerto Rico, con relación a la Sección 10 del Artículo 1 de la Constitución de Puerto Rico, se dijo:

"La inviolabilidad de la persona se extiende a todo lo que es necesario para el desarrollo y expresión de la misma. El hogar, los muebles y utensilios, los libros y papeles poseídos

por un ciudadano son como una prolongación de su persona, pues constituyen el ámbito en que ésta se ha hecho y se mantiene. Toda intromisión sin su permiso en ese círculo privado equivale para todo hombre a una violación de su personalidad. Lo mismo acontece con los medios en que se expresa su intimidad y que reserva tan sólo para algunos: su correspondencia, sus manifestaciones espontáneas a través de los modernos medios mecánicos de comunicación. La lesión de la intimidad es en este sentido el más penoso ataque a los derechos fundamentales de la persona.

"Sin embargo, los mismos medios y propiedades que sirven para el desarrollo y el sostén de la persona pueden ser instrumento de delito o resultado de su comisión. En estos casos detenerse ante esas fronteras de la personalidad equivaldría a la protección indebida del delito y del delincuente. En esta colisión de lo privado y lo público, la solución se entrega, con todas las garantías, a la autoridad judicial encargada de perseguir y sancionar las transgresiones de la ley. Las garantías personales frente al arresto, el registro, la incautación y el allanamiento tienen su límite en la conducta criminal. Sólo para casos de *sospecha fundada* (se eliminaron estas dos palabras en los debates de la Constituyente, véase página 600 del Diario de Sesiones), o sea cuando media causa probable—fuera de situaciones de delito *in flagranti* determinadas por la ley penal—se concede a la autoridad judicial la facultad de expedir mandamientos de arresto y registro."

Creemos que dentro de la frase "solo para casos . . . cuando medie causa probable—*fuera de situaciones de delito in flagranti determinadas por la ley penal*—se concede a la autoridad judicial la facultad de expedir mandamientos de arresto y registro", las palabras: "fuera de situaciones de *delito in flagranti* determinadas por la ley penal" se refieren indudablemente a delitos públicos cometidos en presencia de un oficial del orden público, o sea, aquellos casos donde el

oficial del orden público sorprende al transgresor o al infractor en el momento mismo en que está cometiendo el delito.

En los debates ante la Convención Constituyente de Puerto Rico—Vide Diario de Sesiones de la Convención Constituyente de Puerto Rico, págs. 593–601—, se establece claramente, que en la redacción de la Sección 10 se ha tenido en mente la Constitución Federal—final de la primera columna y principio de la segunda columna de la pág. 594—y se formula una política constitucional de extremada importancia: que no es la intención de la Convención Constituyente restringir el poder político de la Asamblea Legislativa de Puerto Rico en todo lo que se refiera a la persecución del delito y a la protección de los ciudadanos—final de la columna tercera de la pág. 596.

Aunque no se trata directamente de la cuestión del arresto, en la discusión que se forma en torno a las incautaciones de cosas prohibidas, se puede ver claramente cuál fué la verdadera posición de la Convención Constituyente, en cuanto a la deseabilidad de dejar en libertad a la Asamblea Legislativa de Puerto Rico para aprobar aquellas normas, que tanto la persecución del crimen, como la protección de los ciudadanos, demandaran en un momento preciso:

"Sr. GONZÁLEZ BLANES: Señorita Presidenta y compañeros delegados: La enmienda que voy a proponer es por adición, o sea, después de la frase, sección 10, en la línea 16, empezar el apartado diciendo: "No podrán confiscarse bienes algunos sin la previa formación de causa y la obtención de una sentencia condenatoria."

Srta. PRESIDENTA: El señor Secretario va a leer la enmienda, de manera que se oiga claramente.

Sr. SECRETARIO: En la línea 16, se empieza el párrafo como sigue: "No podrán confiscarse bienes algunos sin la previa formulación de causa y la obtención de una sentencia condenatoria."

Sr. PARKHURST: Secundo.

Sr. GONZÁLEZ BLANES: Señorita Presidenta: Esta es una disposición que no existe en la Carta Orgánica. Sí existe en distintas Constituciones. A mi juicio, viene a corregir un

mal que actualmente padecemos en Puerto Rico. Existe la Ley de Bebidas, por ejemplo, así como la de Portar Armas y otras Leyes, que disponen la confiscación de propiedad, aun cuando no haya una formación de causa y una sentencia condenatoria. Para hacerme más claro, por ejemplo, según existe hoy la Ley de Portar Armas, a una persona se le puede ocupar un machete, un cuchillo o un revólver en su automóvil. Ese automóvil inmediatamente es confiscado en el momento del arresto. Ese automóvil en realidad no es una pieza de evidencia, porque las piezas de evidencia no se confiscan. Se utilizan para ser objeto de prueba durante el juicio. Así, por ejemplo, cuando a una persona se le roba un brillante, el Fiscal se queda con ese brillante para presentarlo en evidencia cuando llegue a juicio. Pero aquí no. Aquí, de acuerdo con la ley de portar armas, así como de acuerdo con la ley de bebidas, hay una confiscación de la propiedad. Se da el caso injusto de que en algunas ocasiones se confisca esa propiedad porque en la misma se encuentra un objeto, o se encuentra bebida o un arma, y posteriormente viene una sentencia absolutoria. Mientras tanto, ese vehículo, por ejemplo, si se trata de un automóvil, está en poder de las autoridades depreciando, y ha habido un castigo irrazonable. En muchos sitios no se permite esta confiscación de bienes hasta que no haya una formación de causa y una sentencia condenatoria. Entiendo yo que esto vendría a corregir ese mal existente a virtud de ciertas disposiciones o ciertas leyes que prevalecen en Puerto Rico y ese es el objeto de mi enmienda.

Sr. ALVARADO: Señorita Presidenta.

Srta. PRESIDENTA: El señor delegado Alvarado.

Sr. ALVARADO: Señorita Presidenta. Si nosotros aprobásemos esta enmienda entonces el resultado sería el siguiente: la fuerza pública está persiguiendo, digamos, las infracciones a la Ley de Bolita o la infracción a la Ley de Bebidas o de Narcóticos o de Armas Prohibidas, pero no puede incautarse de la evidencia que va a ofrecer en juicio, hasta que se haya celebrado el juicio, hasta que se haya dictado una sententencia. Esto, claro está, impediría el establecer la prueba en corte para dejar probados los delitos. Ahora, si el compañero dice que eso está limitado a las confiscaciones y que no se refiere a la ocupación de evidencia, encuentro que la diferencia es demasiado sutil para poder ser válida en la práctica. Y no encuentro medios de que se pueda confiscar una imprenta, por ejemplo, porque está dedicada exclusivamente a hojas de bolipool,

de bolita o materia pornográfica, no hay otro medio de efectivamente detener la comisión de ese delito y hacer efectiva la sanción penal en su oportunidad que la confiscación inmediata, dejando libre al ciudadano, como se establece ahora en las leyes,
para que comparezca a reclamar su propiedad, alegando la legalidad de la tenencia de la misma.  Este procedimiento que es el
existente no ata las manos al Estado y asegura a la sociedad de
que, en esta clase de delitos en que es necesaria la confiscación,
va a funcionar el sistema penal, sin estos entorpecimientos enormes que harían imposible la aplicación adecuada de la ley penal.
En materias como ésta, no me parece propia, señorita Presidenta . . . .

Sr. GONZÁLEZ BLANES: ¿Es una pregunta?

Srta. PRESIDENTA: Él tiene su turno.

Sr. GONZÁLEZ BLANES: Ah, yo entendía que era una pregunta.

Sr. ALVARADO: No, estoy argumentando.

Srta. PRESIDENTA: Turno, turno.

Sr. ALVARADO: Materias como ésta no deben quedar sujetas a la prohibición perpetua e inconmovible de una Constitución.  Son materias propias para bregarse con ellas legislativamente y la Legislatura puede establecer aquellas limitaciones
y aquellas formas del cumplimiento mejores conducentes a la
mejor justicia, pero establecer la prohibición constitucional es
indudablemente impedir la eficiente y adecuada administración
de la justicia penal en casos que envuelvan esta clase de propiedad ilegal."

Observamos al mismo tiempo que la Sección 10 se pronuncia contra registros, incautaciones y allanamientos *irrazonables* y no contra registros, incautaciones y allanamientos
*que puedan ser razonables* dentro de las circunstancias de
cada caso, siguiendo la teoría constitucional norteamericana.

Nuestra conclusión tiene que ser indefectiblemente, que
no existe conflicto constitucional alguno entre los arts. 116
inciso 1ro. y 126 del Código de Enjuiciamiento Criminal de
Puerto Rico y la Sección 10 del Artículo I de la Constitución
del Estado Libre Asociado de Puerto Rico, y por lo tanto,
cuando se trata de un delito público cometido en presencia
de un oficial del orden público, éste puede proceder a arrestar
al infractor, registrarlo e incautarse de cualquiera propiedad

prohibida por la ley que encuentre sobre su persona o dentro de su automóvil, siempre que se sigan las normas establecidas por la jurisprudencia constitucional norteamericana.

La primera norma es que el arresto resulte legal, o sea, que el arresto esté autorizado por el estatuto estatal, y se refiera a un delito público claramente definido por ley. Ya hemos visto que el art. 116, inciso 1, de nuestro Código de Enjuiciamiento Criminal, autoriza a un oficial del orden público a arrestar a una persona, sin que exista contra ella orden de arresto por autoridad judicial competente, cuando dicha persona cometa o intente cometer un delito público, en presencia de dicho oficial del orden público, sea *felony* o *misdemeanor*, en cualquiera hora del día o de la noche: *Pueblo v. Ramos*, supra. El art. 12 (*g*) de la Ley número 279 de 5 de abril de 1946 ( (1)' pág. 599), conocida como "Ley de Automóviles y Tránsito", dispone que: "después de la puesta del sol no se dejará un vehículo de motor estacionado en un camino público, sin dotarlo de luces suficientes, visibles en todas direcciones, para evitar peligros a las personas que usaren dicho camino" y el art. 21 de la misma ley, dispone que "las infracciones a las disposiciones de esta Ley para las cuales no se hubiere establecido sanción penal específica, así como las infracciones a los reglamentos promulgados por el Comisionado, serán consideradas como delitos menos grave" (*misdemeanor*). De modo pues, que dejar un vehículo de noche, estacionado en un camino público, durante la noche, sin luces que puedan ser vistas en todas direcciones, es un delito menos grave, por el cual se puede arrestar a su conductor. Para tal arresto no necesita el oficial del orden público ninguna providencia judicial de arresto, pues siendo evidente la comisión del mismo, por la simple observación del vehículo estacionado, se considera como delito cometido en presencia de dicho oficial del orden público: *State v. Deitz*, 239 Pac. 386 (*Main*), (1925), cita precisa a la pág. 387; *State v. Olsen*, 263 P.2d 824, (*Weaver*), (1953), cita precisa a la pág. 826, (se trata de un arresto por violación a las leyes de tránsito, cometida en

presencia del agente del orden público, donde se le ocupa al acusado una pistola dentro de un automóvil) ; *Rucker* v. *State*, 77 N.E.2d 355 (*Young*), (1948), cita precisa a la pág. 356; *Bass et al.* v. *State*, 35 A.2d 155, (*Melvin*), (1943), cita precisa a la pág. 160; *People* v. *Barg*, 51 N.E.2d 168, (*Wilson*), (1943), cita precisa a la pág. 171; *State* v. *Rigsby*, 20 S.E.2d 906, (*Rose*), (1942), cita precisa a la pág. 909; *Johnson* v. *Commonwealth*, 41 S.W.2d 913, (*Hobson*), (1931), cita precisa a la pág. 914, (arresto por falta de luces adecuadas, registro de automóvil e incautación de una pistola).

La segunda norma es que tanto el registro de la persona como de la propiedad bajo su control inmediato al momento del arresto, en este caso un automóvil, y la incautación correspondiente de la prueba del delito (*instrumentalities of the crime*) o de las cosas prohibidas por ley, resulte incidental al arresto legal: 32 A.L.R. 680; 51 A.L.R. 424; 74 A.L.R. 1387; 82 A.L.R. 782. Que el registro e incautación resulte incidental al arresto significa que el propósito fundamental que guíe al oficial del orden público al acercarse a la persona y a la propiedad bajo su dominio inmediato, sea el arresto y no el registro o la incautación. El arresto legal debe ser anterior al registro e incautación, o debe ser coetáneo con dicho registro e incautación, como una consecuencia natural del arresto legal, y para esto, no necesita mandamiento de arresto ni mandamiento de registro e incautación algunos. Cuando el propósito que guía al oficial del orden público al acercarse a la persona y a la propiedad bajo su dominio, es registrarlo para incautarse de cualesquiera cosas prohibidas por la ley que porte sobre su persona, o que se encuentren bajo el dominio inmediato del infractor, necesita un mandamiento expreso de autoridad competente.

El verdadero conflicto de la jurisprudencia no ha sido con el registro de la persona, que resulte incidental a un arresto legal, cuando el delito se comete en presencia de un oficial del orden público, ni con el registro de la propiedad del arrestado que se encuentre bajo el dominio inmediato del arrestado y

que se encuentre a la vista del oficial del orden público. El verdadero conflicto ha sido con el registro de todas las dependencias (*premises*) o negocios fuera del área donde se realiza el arresto: *Marron* v. *United States*, 275 U. S. 192, 72 L. ed. 231, (*Butler*), (1927), cita precisa a las págs. 198 y 199 U. S., 238 L. ed.; *Carroll* v. *United States*, 267 U. S. 132, 69 L. ed. 543, (*Taft*), 1925), cita precisa a la pág. 158 U. S., 533 L. ed; *Harris* v. *United States*, 331 U. S. 145, 91 L. ed. 145, 91 L. ed. 1399, (*Vinson*), (1947), cita precisa a la pág. 150 y 151 U. S., 1405 L. ed.; *Trupiano* v. *United States*, 334 U. S. 699, 92 L. ed. 1663 (*Murphy*), (1948), cita precisa a la pág. 704 U. S., 1668 L.ed; *United States* v. *Rubinowitz*, 339 U. S. 56, 94 L. ed. 653, (*Minton*), (1950), cita precisa a la pág. 60 U. S., 657 L. ed. Un estudio detenido de todos estos casos nos demuestra que nunca ha estado en duda, el derecho de un agente del orden público a arrestar a una persona que ha cometido un delito en su presencia, y como consecuencia de dicho arresto, registrarlo e incautarse de cualquiera cosa que sirva de evidencia de convicción del delito por el cual se le arresta, o incautarse de cualquiera cosa de extrema peligrosidad (*deadly weapons*) o cosa prohibida por la ley que esté portando sobre su persona o que se encuentre bajo el inmediato dominio (*control*) del arrestado y a la vista del oficial de orden público. La controversia entre el caso de Trupiano y el caso de Rabinowitz, que revoca expresamente el caso de Trupiano, gira en torno al registro del sitio del negocio (*place of business*) del arrestado, cuando no hay mandamiento de registro. Véase a la pág. 671 L. ed. la anotación a continuación del caso de Rabinowitz sobre la "Legalidad de los registros de dependencias sin que medie mandamiento de registro como incidental a un arresto válido."

En cuanto a registro de automóviles se refiere, desde el caso de *Carroll* v. *United States*, supra, cita precisa a las págs. 153 y 154; 69 L. ed. 551 haciendo uso de la tesis que la prohibición constitucional se refería a registros irrazonables y no a registros que resultaran razonables dentro de las circunstancias de cada caso, se resolvió, que los registros

automáticos después de arrestos legales de barcos, lanchas de motor, automóviles, etc. resultaban razonables, ya que la movilidad de dichos instrumentos no permitía, como en el caso de edificios, obtener previamente un mandamiento de registro. En cuanto a registro de automóviles mediante orden de arresto véase el caso de *Pueblo* v. *Ríos*, 71 D.P.R. 969 (*Snyder*) (1950), cita precisa a la pág. 972 *et seq.*

La jurisprudencia ha aclarado definitivamente que al verificarse el arresto legal, cualquiera arma mortífera (*deadly weapon*) o cualquiera cosa prohibida por la ley que se encuentre, tanto sobre la persona como en la propiedad bajo el dominio inmediato del arrestado, puede ser objeto de incautación por el oficial del orden público: *Harris* v. *United States*, supra, cita precisa a la pág. 151; 91 L. ed. 1406 y que tales armas mortíferas o cosas prohibidas por la ley pueden utilizarse para acusar al arrestado de un delito distinto a aquel que motivó el arresto: *Harris* v. *United States*, supra, cita precisa a la pág. 154 U. S., 1407 L. ed.; *State* v. *Olsen*, supra: *Shelton* v. *United States*, 50 F.2d 405 (*Evans*), (1931), cita precisa a la pág. 407; *State* v. *Proud*, 262 P.2d 1016, (*Thomas*), (1953), cita precisa a la pág. 1019; *Wilson* v. *Commonwealth*, 258 S.W.2d 497; (*Stewart*), (1953), cita precisa a la pág. 499; *United States* v. *Heitner*, 149 F.2d 105 (*L. Hand*), (1945), cita precisa a la pág. 106; *State* v. *Superior Court*, 188 P.2d 125 (*Robinson*), (1948), cita precisa a la pág. 129; *Rucker* v. *State*, supra, cita precisa a la pág. 356; *State* v. *Rigsby*, supra, cita precisa a las págs. 909 y 910; *Bass* v. *State*, supra, cita precisa a las págs. 159 y 160. El hecho de que el arrestado salga absuelto del delito por el cual se le arrestó, no significa que se convierta en ilegal la incautación de las armas mortíferas o cosas prohibidas tomadas durante el arresto por otro delito: *Shelton* v. *United States*, supra, cita precisa a la pág. 407.

*Debe confirmarse la sentencia apelada.*

Los Jueces Asociados Sres. Negrón Fernández y Sifre disintieron.